1  WO

2

3

4

5

6  **IN THE UNITED STATES DISTRICT COURT**

7  **FOR THE DISTRICT OF ARIZONA**

8

9  Andrew Berrey,

10                    Stakeholder,

11  v.

12  Plaintiff Investment Funding, LLC; Dignity
   Healthcare, Inc. d/b/a Mercy Gilbert
13  Hospital; Scottsdale Healthcare Corp.; and
   Injury Assistance, LLC,
14

15                    Claimants.

No. CV-14-00847-PHX-BSB

**ORDER**

16       In this interpleader action, Stakeholder Andrew Berrey has filed a motion for

17  summary judgment on an affirmative defense and counter claim that Claimant Injury

18  Assistance, LLC has asserted. (Doc. 66.)  In the affirmative defense, Injury Assistance

19  asserts that it has health care provider lien rights, and in the counter claim it alleges

20  breach of contract.  (Docs. 16 and 28.)[1]  Injury Assistance has filed a response in

21  opposition to Berrey's motion and a cross-motion for summary judgment on its asserted

22  lien and contract claim.  (Doc. 72.)

23       As set forth below, the Court orders additional briefing on Injury Assistance's

24  affirmative defense that it has lien rights as an assignee or agent of a health care provider.

25  _____

26       [1] Injury Assistance filed an answer and counter claim (Doc. 16) and an amended
   answer.  (Doc. 28.)  The amended answer does not reassert Injury Assistance's counter
27  claim.  However, Berrey has not argued that Injury Assistance's amended answer
   superseded its original answer, and although the amended answer does not reference or
28  incorporate the original answer, it does not appear that the amended answer was intended
   to supersede the original answer.  Therefore, the Court considers Injury Assistance's
   answer and counter claim, and its amended answer.

1   The Court enters summary judgment in Berrey's favor on Injury Assistance's counter

2   claim that its contract with Berrey created additional lien rights.  Specifically, the Court

3   finds that the lien provisions in the contract are unenforceable as an assignment of the

4   proceeds of Berrey's underlying personal injury claim.  However, the Court finds that

5   Injury Assistance may have a contract claim against Berrey for payment of medical

6   expenses and therefore denies Berrey's motion for summary judgment on Injury

7   Assistance's counter claim for breach of contract.  The Court also denies Injury

8   Assistance's cross motion for summary judgment on its contract claim.

9        Based on the parties' additional briefing on Injury Assistance's affirmative

10  defense asserting lien rights, the Court may find that Injury Assistance does not have an

11  interpleader claim, but only a contract claim.  Therefore, because only the breach of

12  contract claim may remain, the Court orders additional briefing on whether it should

13  exercise supplemental jurisdiction over the counter claim.

14       Finally, although Berrey has not filed a motion challenging Claimant Plaintiff

15  Investment Funding, LLC's (PIF) claim to the settlement proceeds, the Court orders

16  Berrey and PIF to file briefing addressing the nature of PIF's claim, including whether

17  that claim may be an unenforceable assignment of a personal injury claim or the proceeds

18  of a personal injury claim, and the identity and citizenship of PIF's members.  The Court

19  raises these issues *sua sponte* because PIF is the only claimant alleged to have diverse

20  citizenship.  (Doc. 16 at ¶¶ 1-6.)  If PIF does not have diverse citizenship, or does not

21  have an interpleader claim, the Court may not have jurisdiction over this matter under

22  28 U.S.C. § 1335.

23  **I.      Background**

24       This is an interpleader action in which the parties assert conflicting claims to

25  settlement proceeds Berrey received in a personal injury action.  (Doc. 15.)  In September

26  2010, Berrey was in a car accident that "caused cervical strain (whiplash) and

27  headaches."  (Doc. 15 at ¶ 10.)  On January 24, 2011, Berrey went to chiropractor

28  Dr. Scott Strattman at Total Care Chiropractic and Injury Services (Total Care).

(Doc. 67, Ex. 2.)   At that time, Strattman had an ownership interest in Total Care and Injury Assistance.  (Doc. 72 at 3.)   That same day, Berrey and his attorney executed a "Contract for Medical Services" with Injury Assistance, which provided that Injury Assistance's contract providers would provide medical care to Berrey on a "lien basis." (Doc. 67, Ex. 3.)[2]  The contract further provided that Injury Assistance would wait for payment for these medical services until Berrey received a settlement or judgment against a third party.[3]  In addition, the contract clarified that it was intended to provide additional guarantees for payment beyond current lien laws:

> This contract for providing medical services on a lien basis is additional security and guarantee for payment by the undersigned patient and patient's attorney beyond that protection provided by the current codified lien laws. The protection afforded to Injury Assistance by way of this agreement is in addition to and not in lieu of the current lien laws.  It is understood that Injury Assistance and its contract providers would not be providing the reasonable and necessary medical services desired by the undersigned patient should all the terms of this agreement not be strictly adhered to.

(*Id.*)

The contract provided that Berrey's attorneys were authorized to pay Injury Assistance directly from any settlement proceeds for the medical care provided, to list Injury Assistance on any settlement check, and provided Injury Assistance with a "durable power of attorney" so that it could endorse any check without Berrey's signature.[4]  The contract authorized Injury Assistance "to deal directly with any

---

[2]  Exhibit 3 is located at Doc. 67 at ECF pages 17-19.

[3]  The contract provided that:

Injury Assistance shall provide reasonable and medically necessary services to the undersigned patient by and through its contract providers on a lien basis.  Injury Assistance by and through its contract providers agree[s] to wait upon payment from the undersigned patient until monies are obtained from settlement, payment or judgment against a third party or collected from a first party source including but not limited to med pay/pip, uninsured or underinsured motorist coverages.

[4]  The contract further provided, in part, that:

The undersigned patient authorizes and directs the attorney below and any other attorneys retained in the future to directly pay such sums that may be

applicable insurance, so as to satisfy said lien obligation."[5] The contract also provided

that Injury Assistance's rights under this "lien" could be sold or reassigned:

> The undersigned patient agrees and acknowledges that this lien and all rights for collection of payment arising out of the same, can and may be sold and reassigned and recognize[s] that the purchaser of said lien will be entitled to all rights, as expressed herein.

(*Id.*)   Finally, the contract provided that Berrey was responsible for all amounts the

providers charged and that payment was not contingent on his recovery on his claim:

---

> due and owing for professional services provided by reason of the accident, and to withhold such sums from any settlement, judgment, collateral source or verdict, including but not limited to liability, uninsured, underinsured, med pay/pip coverage or any other monies as may be required to adequately protect said provider.
>
> The undersigned patient further directs said attorney(s) to pay "IN FULL" all amounts owed to Injury Assistance and its contract providers and mailed to the address below for said provider(s) arising out of treatment of any injuries from said accident.
>
> * * * *
>
> The undersigned patient irrevocably agrees to list Injury Assistance and its contract providers on any settlement draft(s)/check(s).   The patient also agrees that this lien and all the rights granted to said doctor/facility will continue in full force and be binding upon me and counsel, should there be a change in attorneys in the future.
>
> * * * *
>
> The undersigned patient shall also provide, by signing below, durable power of attorney on behalf of Injury Assistance and its contract providers to be able to endorse any draft/check on the patient's behalf, so that any outstanding amount due and owing Injury Assistance and its contract providers can be satisfied without additional signature from the undersigned patient.
>
> [5] The contract provided that:
>
> Should the undersigned patient change attorneys, the undersigned patient will notify the lien holder promptly of the same and also notify said future attorney of all obligations arising out of this lien agreement.   Should the undersigned patient not obtain new counsel, or not provide the current whereabouts within a reasonable period of time (7 business days) to Injury Assistance and its contract providers, then Injury Assistance and its contract providers may deal directly with any applicable insurance, so as to satisfy said lien obligation.

> The undersigned patient understands that the patient is directly and fully responsible to Injury Assistance and its contract providers for all amounts due and owing, and that this lien is being provided solely as additional protection to Injury Assistance and its contract providers. The undersigned patient provides this lien in consideration of Injury Assistance and its contract providers waiting upon payment. The undersigned patient further recognizes that payment to Injury Assistance and its contract providers is not contingent upon any settlement, judgment or verdict that I may or may not eventually obtain as reimbursement of said fee.

(*Id*.)

Strattman referred Berrey to several health care providers and Injury Assistance advanced some funding for that care. (Doc. 67 at 21-31; Doc. 72 at 4.) Strattman referred Berrey to Dr. Grant Padley at The Orthopedic Clinic Association and Dr. Mark J. Rubin at Arizona Center for Pain Relief. Dr. Rubin referred Plaintiff to Western Arizona Radiology for imaging.[6] (Doc. 72 at 4; Doc. 67 at 21-31.) Injury Assistance and Berrey agree that the referred providers' bills total $43,901.59. (Doc. 15 at ¶ 32; Doc. 16 at 2.)

On February 24, 2011, the Maricopa County Recorder's Office recorded a "Notice and Claim of Injury Assistance Lien." (Doc. 16, Ex. 1.) In its affirmative defense, Injury Assistance asserts that it filed this lien and thus was "assigned health care provider liens as defined by A.R.S. § 33-931." (Doc. 16 at ¶ 16.) The Injury Assistance lien identifies Injury Assistance as the "claimant." (Doc. 16, Ex. 1.) It does not list any health care providers or amounts subject to the lien, but instead states "providers and totals to be supplemented at the close of treatment." (*Id*.) Injury Assistance is not identified as an "agent" or "assignee" on the lien. (*See id*.) Instead, the lien identifies R. Monique Heaton as Injury Assistance's agent and includes her avowal that "she is the agent of [Injury Assistance] and makes this Notice and Claim of Lien for and on behalf of said hospital [sic]." (*Id*.) There is nothing in the record to suggest that Injury Assistance filed any supplement with the names of the providers or the amounts subject to the lien.

---

[6] Consistent with the parties' motions, the Court refers to Dr. Padley, Dr. Rubin, and Western Arizona Radiology collectively as the referred providers. Injury Assistance also identifies Dr. Joel Braun and Dr. Jeffrey Dare as physicians who treated Berrey "on the [Injury Assistance] lien." (Doc. 72 at 12.)

The record before the Court does not include any health care provider liens recorded by any of the referred providers. However, on March 28, 2011, approximately a month after Injury Assistance filed its lien, Western Arizona Radiology, through its agent Cyndee Caesar, signed a "Notice of Sale and Assignment." (Doc. 77, Ex. B.) This notice states that Western Arizona Radiology "has sold and assigned to Injury Assistance, all its rights, title, and interest for the above described account [amount due $2,700.00 for Berrey] and supported by the attached duly executed lien." (*Id.*) There is no lien attached to the copy of this notice submitted to the Court, but it appears that the notice may be referring to the February 24, 2011 Injury Assistance lien.

On April 11, 2011, approximately six weeks after Injury Assistance filed its lien, Arizona Center for Pain Relief (Dr. Rubin), through its agent Ava Rogut, also signed a "Notice of Sale and Assignment." (Doc. 77, Ex. B.) The wording of this notice is identical to the notice that Western Arizona Radiology signed and also identifies an account for Berrey, but with $2,754.60 as the amount due. The copy of this notice also does not include "an attached duly executed lien," but the Court again notes that it appears the notice may refer to the February 24, 2011 Injury Assistance lien. The record does not contain a similar agreement from Dr. Padley or The Orthopedic Clinic Association or any of the additional providers that Injury Assistance identified as providing services under its lien.

After settling his personal injury action, Berrey filed this interpleader action under 28 U.S.C. § 1335 and Rule 22 of the Federal Rules of Civil Procedure. (Doc. 16.) Berrey asserted that the claimants/defendants, including Injury Assistance, have conflicting claims to the settlement proceeds from his personal injury action. (Doc. 16 at ¶¶ 8, 46-50, 52.) Berrey deposited the settlement proceeds into the Court's registry. (Doc. 25.)

In his motion for summary judgment, Berrey argues that Injury Assistance does not have an enforceable health care provider lien on the settlement proceeds and cannot assert such lien rights by contract. (Doc. 66 at 4.) In its response and cross-motion for

summary judgment, Injury Assistance argues that it has a claim against the settlement proceeds because it holds a valid health care provider lien under Arizona law as the agent or assignee of the referred providers, and that it has an enforceable contract with Berrey for payment of medical services.  (Doc. 72.)

## II.    Summary Judgment Standard

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment, and the disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).

The parties agree that this interpleader action is governed by Arizona substantive law.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 76 (1938) (stating that "[e]xcept in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Equitable Life Assur. Soc. of U.S. v.* McKay, 837 F.2d 904, 905 (9th Cir. 1988) (applying the law of the forum state in interpleader action under 28 U.S.C. § 1335).

## III.    Injury Assistance's Affirmative Defense Asserting Lien Rights

Under Arizona common law, personal injury claims and the proceeds of such claims are not assignable.  *See, e.g., Allstate Ins. Co. v. Druke*, 576 P.2d 489, 491-92 (Ariz. 1978).  However, the Arizona legislature enacted health care provider liens, set forth at Ariz. Rev. Stat. §§ 33-931 − 936, to "lessen the burden on hospitals and other medical providers imposed by non-paying accident patients."  *Blankenbaker v. Jonovich*, 71 P.3d 910, 914 (Ariz. 2003) (quoting *LaBombard v. Samaritan Health Sys.*, 991 P.2d

246, 251 (Ariz. Ct. App. 1998)).  The statutes achieve this goal by "affording providers a remedy not available in common law — a lien against 'all claims of liability or indemnity.'"  *Blankenbaker*, 71 P.3d at 914.

Section 33-931 provides, in relevant part, that:

> Every individual, partnership, firm, association, corporation or institution . . . that maintains and operates a health care institution or provides health care services in this state and that has been duly licensed by this state, . . . is entitled to a lien for the care and treatment . . . of an injured person.  The lien shall be for the claimant's customary charges for care and treatment . . . of an injured person.  A lien pursuant to this section extends to all claims of liability or indemnity . . . for damages accruing to the person to whom the services are rendered, or to that person's legal representative, on account of the injuries that gave rise to the claims and that required the services.

Ariz. Rev. Stat. § 33-931(A).

Berrey argues that he is entitled to summary judgment on Injury Assistance's affirmative defense that it has health care provider lien rights and thus has a claim against the settlement proceeds.  (Doc. 66 at 5-7.)  Berrey asserts that Injury Assistance does not have a valid health care provider lien because it is not a health care provider, it did not provide health care services to Berrey, it is not licensed to provide health care services, and it does not have customary charges.  (*Id.* at 5-6.)  Berrey also argues that Injury Assistance cannot "usurp the lien rights of an actual provider by the suggesting that the true provider is providing services on Injury Assistance's behalf." (*Id.* at 6.)

In response, Injury Assistance acknowledges that it did not provide medical care to Berrey and that it is not a health care provider.  (Doc. 72 at 8 (stating that "IA was involved in the medical lien/factoring industry.").)  Thus, Injury Assistance does not argue that it has a direct health care provider lien under § 33-931.  (*Id.*)  Instead, Injury Assistance argues that it holds the lien rights of the referred providers as their assignee or agent.  (Doc. 72 at 8-9; Doc. 16 at ¶ 16 ("IA affirmatively alleges that it has been assigned health care provider liens as defined by A.R.S. § 33-931 *et seq.*").)  In reply, Berrey asserts that because Injury Assistance "admittedly provided no health care services to Berrey, [it] is not entitled to take an assignment of this statutory exclusion."

1   (Doc. 75 at 2-3.)  Berrey further argues that Injury Assistance cannot assert these lien

2   rights as the providers' "recording agent."  (Doc. 75 at 4-6.)

3       **A.    Injury Assistance's Lien Rights as Assignee or Agent of the Providers**

4       Injury Assistance argues that "[t]here is no statute or case law in Arizona that

5   states a medical provider lien cannot be assigned" and acknowledges that "there is no

6   case law in Arizona that addresses assignation of medical provider lien rights."  (Doc. 72

7   at 8-9.)  Therefore, to support its claim that such lien rights may be assigned, Injury

8   Assistance cites cases from other jurisdictions that do not address the Arizona health care

9   provider lien statute.  (*Id.* at 9.)

10      Berrey disputes Injury Assistance's assertion that it is the assignee of the lien

11  rights and argues that health care provider liens are unassignable.  (Doc. 66 at 5-7.)  To

12  support his argument, Berrey cites *Brockman v. Metro. Life Ins. Co.,* 609 P.2d 61 (Ariz.

13  1980), and *Druke*, 576 P.2d 489.   (Doc. 66 at 7.)   These cases, however, hold that

14  personal injury actions and the proceeds of personal injury actions are not assignable.

15  *See Brockman*, 609 P.2d at 63; *Druke*, 576 P.2d at 493.  *Brockman* and *Druke* do not

16  address whether health care provider liens under § 33-931 are assignable.

17      To assert its lien rights as the "agent" of the referred providers, Injury Assistance

18  relies on § 33-932, which provides that a "health care provider or agent of a healthcare

19  provider" may record a lien.  Ariz. Rev. Stat. § 33-932(A).  Injury Assistance then cites

20  the dictionary definition of "agent" as "[o]ne who represents or acts for another under

21  contract."  (*Id.* at 8.)  Thus, it appears Injury Assistance is asserting that it filed a health

22  care provider lien or liens on the referred providers' behalf and therefore is the agent of

23  the referred providers and has the right to enforce these liens.  (*See id.*)  In response,

24  Berrey argues that Injury Assistance's characterization of its role as "recording agent,"

25  even if accepted, would only establish that Injury Assistance was authorized to record the

26  providers' liens, not to enforce the liens.  (Doc. 75 at 4.)

27      The Arizona health care provider lien statute does not directly address the

28  assignability of health provider liens or whether an agent of a health care provider can

1   enforce these lien rights, and the parties have not identified any case law that addresses

2   these issues.[7]   Nonetheless, even if this Court were to assume that under Arizona law

3   such liens under § 33-931 can be assigned, or that an agent under § 33-932 assumes the

4   lien rights, Injury Assistance would only have the rights of the referred providers.  *See*

5   *K.B. v. State Farm Fire and Cas. Co.,* 941 P.2d 1288, 1292 (Ariz. Ct. App. 1997) ("An

6   assignee steps into the shoes of [its] assignor.").[8]   Therefore, the Court must determine if

7   there are any enforceable health care provider lien rights that could have been assigned to

8   Injury Assistance, or which Injury Assistance could enforce as an agent of the referred

9   providers.[9]   The parties have not addressed whether there were any validly perfected lien

10  rights that could have been assigned to Injury Assistance as an agent or assignee of the

11  referred providers.

12  ### B.    Perfecting Health Care Provider Liens

13      The Arizona Supreme Court has held that for a health care provider lien to be

14  enforceable, it must be filed with the county recorder in accordance with the perfection

15  provision of Ariz. Rev. Stat. § 33-932.   *Blankenbaker*, 71 P.3d at 913.   That section

16  requires that "to perfect a lien granted by § 33-931, the . . . licensed health care provider

17  or agent of a health care provider shall record, before or within thirty days after the

18  patient has received any services relating to the injuries" a verified statement in the office

19

20      [7]   The Court notes that § 33-931, which establishes the lien rights of health care providers, does not include "agent of a health care provider" among those entitled to lien rights.   Furthermore, even if a health care provider can appoint an agent to carry out the administrative task of perfecting a lien by filing it with the county recorder's office, Injury Assistance has not cited any authority supporting the proposition that completing that administrative task entitled the health care provider's agent, rather than or in addition to the health care provider, to enforce the lien and to recover under that lien.

24      [8]   *See also* AMJUR ASSIGN § 108 ("As a general rule, an assignee takes the subject of the assignment with all the rights and remedies possessed by or available to the assignor. . . . The assignee cannot recover more than the assignor could recover, and the assignee has no greater rights than the assignor.")

26      [9]   Because the Court may not need to reach these issues to resolve the parties' motions for summary judgment, the Court clarifies and explicitly states that in this Order it is *not* deciding whether health care provider liens under § 33-931 are assignable, or whether an "agent" authorized to record a lien for a health care provider has any rights to enforce the lien.

of the recorder in the county where the provider is located.  Ariz. Rev. Stat. § 33-932(A).

The verified statement must include the following information:

1.    The name and address of the patient as they appear on the records of the health care provider.

2.    The name and location of the health care provider.

3.    The name and address of the executive officer or agent of the health care provider, if any.

4.    The dates or range of dates of services received by the patient from the health care provider.

5.    The amount claimed due for health care.

6.    For health care providers other than hospitals or ambulance services, to the best of the claimant's knowledge, the names and addresses of all persons, firms or corporations and their insurance carriers claimed by the injured person or the injured person's representative to be liable for damages arising from the injuries for which the person received health care.

*Id.*  The statute further provides that the verified statement "shall also include the amount claimed due as of the date of recording of the claim or lien and a statement whether the patient's treatment has terminated or will be continued.  Amounts incurred during the continued period are also subject to the lien."  Ariz. Rev. Stat. § 33-932(B).

The Arizona Supreme Court has held that the provisions of Arizona's lien statutes must be strictly followed.  *See Blakenbaker*, 71 P.3d at 913-14 (holding that chiropractor could not enforce health care provider lien because he did not file a statement of claim as required by Ariz. Rev. Stat. § 33-932); *Nationwide Mut. Ins. Co. v. Ariz. Health Care Cost Containment Sys.*, 803 P.2d 925, 928 (Ariz. Ct. App. 1990) ("Although Arizona lien statutes are remedial and are to be liberally construed, their provisions must be strictly followed.").  Furthermore, a health care provider lien must be properly perfected in compliance with § 33-932 as a prerequisite to the enforcement of such a lien.  *See Garcia v. Whitbeck*, 2012 WL 1150866, at *1 (Ariz. Ct. App. Apr. 5, 2012) ("Perfection of a healthcare provider lien is a prerequisite to enforcement.") (citing *Blankenbaker*, 71 P.3d at 911).

- 11 -

1    Here, the record includes the "Notice and Claim of Injury Assistance Lien," filed

2    with the Maricopa County Recorder on February 24, 2011. (Doc. 16, Ex. 1.)  Although

3    Injury Assistance is listed as the "claimant," as discussed above, it is not a health care

4    provider.   In addition, this lien does not identify Injury Assistance as the agent or

5    assignee of any health care provider.  It also does not list the names and addresses of any

6    providers, the dates of services provided, or the amounts claimed due, as § 33-392(A)

7    requires to perfect a lien.

8    The record also includes agreements labeled as "Notice of Sale and Assignment"

9    from Western Arizona Radiology and from Arizona Center for Pain Relief (Dr. Rubin).

10   (Doc. 77, Ex. B.)   As previously noted, these notices were executed *after* Injury

11   Assistance filed its purported health care provider lien and the copies submitted to the

12   Court do not include the "attached duly executed lien[s]" referenced in the notices.  The

13   record does not include any recorded health care provider liens from any of the referred

14   providers, or any assignments or agency agreements from referred providers other than

15   the notices of sale and assignment from Western Arizona Radiology and the Arizona

16   Center for Pain Relief.

17   **C.    Additional Briefing under Rule 56(f)**

18   From the information the parties provided, the Court cannot determine whether

19   any of the referred providers properly perfected health care provider liens, assigned such

20   liens to Injury Assistance, or entered an agency relationship with Injury Assistance.  If

21   the referred providers did not properly perfect health care provider liens, or enter agency

22   or assignment agreements with Injury Assistance, Berrey may be entitled to summary

23   judgment on Injury Assistance's affirmative defense that it has health care provider lien

24   rights.   Thus, summary judgment may be appropriate without reaching the issues of

25   whether a health care provider lien can be assigned, or whether an agent authorized to

26   record a health care provider lien also has the right to enforce the lien.

27   Although the parties did not address these issues, under Rule 56(f), "[a]fter giving

28   notice and a reasonable time to respond, the court may . . . (2) grant the motion on

- 12 -

grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f). Therefore, the Court directs the parties to submit additional briefing on (1) whether any of the referred providers properly perfected a health care provider lien, submitting copies of relevant documents, (2) whether any of the referred providers assigned any health care provider liens to Injury Assistance, again submitting relevant documents, and (3) whether any of the referred providers entered agency agreements with Injury Assistance that authorized Injury Assistance to record liens on behalf of the referred providers or that authorized Injury Assistance to enforce any recorded health care provider liens, again submitting relevant documents.

## IV.   Injury Assistance's Counter Claim for Breach of Contract

Berrey also argues that Injury Assistance's contract for medical services is an unenforceable assignment of the proceeds of his personal injury action, which Arizona law prohibits. (Doc. 66 at 9 ("Injury Assistance cannot contract around Arizona's anti-subrogation law.").) Injury Assistance argues that it has a valid contract for payment of "amounts due and owing" for medical services from the referred providers. (Doc. 72 at 9.) Injury Assistance asserts that Berrey is liable under the contract "for all outstanding medical bills incurred for treatment facilitated by [Injury Assistance]." (Doc. 16.) Therefore, both Berrey and Injury Assistance seek summary judgment on Injury Assistance's counter claim for breach of contract.

### A.   Arizona Law Prohibits the Assignment of Personal Injury Claims

As set forth above, under Arizona law, absent statutory authorization, the assignment of personal injury claims and the assignment of future proceeds arising out of personal injury claims are prohibited. *See, e.g., Druke*, 576 P.2d 489 (holding medical expense reimbursement provision in insurance policy was unenforceable assignment of insured's personal injury claim); *Karp v. Speizer*, 647 P.2d 1197, 1199 (Ariz. Ct. App. 1982) (rejecting distinction between assigning claim and assigning proceeds of claim, and holding that the proceeds of a personal injury claim cannot be assigned to satisfy a debt).

In *Druke*, the court stated that if an asserted right of reimbursement "create[s] an interest in any recovery against a third party for bodily injury . . . [it] is the legal equivalent of an assignment and therefore unenforceable." 576 P.2d at 492. The court held that an insurance contract provision requiring reimbursement of medical payments from the proceeds of an insured's personal injury action was an unenforceable assignment of the insured's cause of action. *Id*. The court found that the policy provision was intended "to create a legally enforceable interest in any claim that their insured might have against a third party tortfeasor" and, therefore, was an assignment of the insured's cause of action for personal injury. *Id.* Although the policy did not expressly attempt to assign the cause of action, the court found that was the "practical result" of the reimbursement provision. *Id*. at 491-92.

However, an agreement authorizing an attorney to pay medical bills from any money that "may become payable by reason of the claim" did not create an interest in the patient's personal injury claim and, thus, the Arizona Supreme Court held that agreement was not an assignment of the claim. *See State Farm Mut. Ins. Co. v. St. Joseph's Hosp.*, 489 P.2d 837, 842 (Ariz. 1971). In *St. Joseph's,* the court explained that an "assignment creates an interest in property and as to the portion assigned, it can be conveyed by the assignee who is co-owner with the assignor." *Id*. (citation omitted). The court found that the agreement authorizing the attorney to pay medical expenses created no interest for the health care providers in the proceeds of the personal injury claim, but instead authorized the attorney to act as a "collecting agent" for these providers. *Id.* As the court explained, if the patient discharged the attorney, or did not recover on her claim, the providers would have no claim for payment. *Id.*

The Arizona courts have continued to adhere to the rule against the assignment of personal injury claims. *See Lingel v. Olbin,* 8 P.3d 1163, 1168 (Ariz. Ct. App. 2000) (holding that contract to share proceeds of a wrongful death action was an unenforceable assignment of a personal injury claim and noting that plaintiffs were asserting "a direct interest in the proceeds" of the claim); *Piano v. Hunter,* 840 P.2d 1037, 1040-41 (Ariz.

Ct. App. 1991) (stating that "the rule prohibiting assignment of a personal injury claim has been applied by the Arizona courts without exception in a variety of contexts," and holding that a third party reimbursement provision for self-insured trust was unenforceable assignment of personal injury claim); *Brockman*, 609 P.2d at 63 (concluding that a "compromise and settlement" agreement for reimbursement of medical expenses paid under an insurance policy was an assignment of the proceeds of a personal injury claim and thus was unenforceable).

Berrey and Injury Assistance agree that, under Arizona law, personal injury claims cannot be assigned. (Doc. 66 at 5 ("Arizona law prohibits the assignment of an interest in the proceeds of personal injury actions."); Doc. 72 at 8 ("Arizona case law is very clear that cause of actions or proceeds from personal injury cases are subrogation claims and are unassignable as decided in *Brockman* and its progeny.").) However, as set forth below, they dispute whether Injury Assistance's contract with Berrey for medical services is unenforceable as an assignment of Berrey's personal injury claim or the proceeds of that claim.

### B.    Injury Assistance's Contract "Lien" Rights are Unenforceable

Relying on Arizona common law, Berrey argues that the Injury Assistance contract is "an impermissible attempt to claim a lien against [his] personal injury proceeds." (Doc. 75 at 7 (citing provisions in contract stating that services are provided on a "lien" basis).) Injury Assistance states that the contract "does not constitute an impermissible assignment of personal injury proceeds or cause of action in violation of Arizona's anti-subrogation laws." (Doc. 72 at 9.) To support this assertion, Injury Assistance relies on the provision of the contract that Berrey "is directly and fully responsible" for "all amounts due and owing," and that "payment to Injury Assistance and its contract providers is not contingent upon any settlement, judgment, or verdict" that Berrey may receive. (Doc. 72 at 9-10.) As set forth below, the Court finds that the contract asserts "lien" rights that are unenforceable as an assignment of the proceeds of Berrey's personal injury claim.

In the contract at issue, Injury Assistance asserts that it has "lien" rights for repayment for medical services from the referred providers.  (Doc. 67, Ex. 3.)  The contract does not refer to a health care provider lien or other statutory lien and thus it appears to assert a lien arising from the contract.  The contract repeatedly states that Injury Assistance is facilitating medical services on "a lien basis," and that Berrey "will see Injury Assistance contract providers on a lien basis."  (*Id.*)

The contract further provides that Injury Assistance will wait for payment "until monies are obtained from settlement," that Berrey will list Injury Assistance and its contract providers on any settlement check, that Berrey provides Injury Assistance with a "durable power of attorney" to endorse any settlement check on Berrey's behalf so that any amount due Injury Assistance can be paid without Berrey's signature, and that if Berrey does not provide information about his counsel or his whereabouts, Injury Assistance can "deal directly with any applicable insurers, so as to satisfy said lien obligations."  (*Id.*)  Perhaps most significantly, the contract states that "this lien and all rights for collection of payment arising out of the same, can and may be sold and reassigned and . . . that the purchaser of said lien will be entitled to all rights, as expressed herein."  (*Id.*)

The Court finds that these provisions of the contract — which allow Injury Assistance to endorse settlement checks without Berrey's signature, to negotiate with insurers directly to settle claims for recovery of the cost of medical services, to sell or reassign its claims against any settlement proceeds for medical expenses, and which require Berrey to list Injury Assistance on any settlement checks — attempt to create a legally enforceable interest for Injury Assistance in any recovery from Berrey's personal injury claim. *See Druke,* 576 P.2d 492.  Thus, to the extent the contract attempts to assert "lien" rights, it is an unenforceable assignment of the proceeds of Berrey's personal injury claim.  Therefore, the Court enters summary judgment in Berrey's favor on Injury Assistance's counter claim to the extent that claim asserts lien rights against the settlement proceeds of Berrey's personal injury claim.

### C.    Injury Assistance's Contract Counter Claim is Not an Assignment

The contract also characterizes Injury Assistance's rights as contractual rights for reimbursement for payment of medical expenses.   (Doc. 67, Ex. 3.)   The contract provides that Injury Assistance will "provide reasonable and medically necessary services" and wait for payment "until monies are obtained from settlement, payment or judgment."   (*Id.*)   The contract asserts that it is intended as "additional security and guarantee for payment by [Berrey and his attorney] beyond that protection provided by the current codified lien laws.  The protection afforded to Injury Assistance by way of this agreement is in addition to and not in lieu of the current lien laws." (*Id.*)

The contract also provides that Berrey directs his attorneys to "pay IN FULL all amounts owed to Injury Assistance and its contract providers," that Berrey "understands that [he] is directly and fully responsible to Injury Assistance and its contract providers for all amounts due and owing," and that "payment to Injury Assistance and its contract providers is not contingent upon any settlement, judgment or verdict." (*Id.*)

The Court concludes that the parties' intent was for Injury Assistance and its contract providers to provide medical services for Berrey and to wait for payment until Berrey's personal injury action was resolved by judgment or settlement.  The parties also intended for Berrey to be responsible to pay for medical care he received, regardless of whether he received a settlement or judgment.  (*Id*.)  Therefore, under the contract, Injury Assistance may have received contractual reimbursement rights against Berrey that were independent of Berrey's personal injury claim or any lien against the proceeds of that claim.  This contract claim for reimbursement is not an assignment of Berrey's personal injury claim.

The Arizona courts recognize that a healthcare "provider can always proceed, even in the absence of a [statutory] lien, against the patient for the value of the services rendered." *Blankenbaker v. Jonovich*, 71 P.3d 901, 915 (Ariz. 2003); *see also The Pain Mgmt. Clinic, P.C. v. Preese*, 275 P.3d 1284, 1285 (Ariz. Ct. App. 2012) (concluding that the release of a statutory lien did not waive the medical provider's independent right to

demand payment on the underlying debt). In *Blankenbaker*, the Arizona Supreme Court found that an agreement between a healthcare provider, a patient, and a patient's attorney did not create a statutory healthcare provider lien enforceable against the patient. (*Id.*) However, the court explained that Arizona's lien statutes do not preclude contract claims:

> [the] lien statutes extend to health care providers a remedy not available under common law — the ability to enforce a lien against those liable to the patient for damages in order to secure the providers' customary charges for care and treatment of an injured person. But nothing in the statutes suggests that the legislature thereby intended to restrict any remedy that the provider might have directly against the patient.

*Id.* The court further stated that there was nothing in the lien statutes suggesting that the legislature "intended to restrict a provider's ability to enter into contracts with a patient under which either the patient or someone other than those liable for damages — such as a lawyer representing the patient — provides for guarantee or other security with respect to payment of the providers' claims." *Id.*

The Court concludes that Injury Assistance and Berrey entered a contract under which Berrey and "someone other than those liable for damages — [his lawyer] — provide[d] for guarantee or other security with respect to payment of the providers' claims." *See Blankenbaker.* 71 P.3d at 915. Therefore, the Court denies Berrey's motion for summary judgment on Injury Assistance's counter claim for breach of contract.

The Court also denies Injury Assistance's cross motion for summary judgment on its counter claim for breach of contract because Injury Assistance has not adequately briefed its cross motion or provided any analysis of the applicable law or an undisputed factual basis for the Court to enter summary judgment in its favor. *See Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986) ("It is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel."); *Marco Realini v. Contship Containerlines, Ltd.*, 143 F. Supp. 2d 1337, 1343 (S.D. Fla. 1999) (denying summary judgment when parties had failed to adequately brief the issues).

Instead, Injury Assistance has asserted that it has a contract claim and that all of the referred providers provided treatment "related" to Berrey's injuries that arose from his automobile accident.  (Doc. 72 at 9-13.)   To support its cross motion, Injury Assistance's Separate Statement of Uncontroverted Facts lists ten "statements of fact," but five of these statements are conclusions of law.  (Doc. 74 at ¶¶ 6-10.)  Furthermore, only one asserted factual statement is relevant to the counter claim for breach of contract — that Berrey entered a contract with Injury Assistance.  (*Id.* at ¶ 4.)  Of course, the existence of a contract is not sufficient to establish a claim for breach of contract.[10] Furthermore, although the parties agree that the referred providers billed $43,901.59 (Doc. 15 at ¶ 32; Doc. 16 at 2), they dispute whether these bills were related to Berrey's accident.[11]  (Doc. 72 at 9-13; Doc. 77 at ¶ 2.)  Therefore, the Court finds that there are disputed issues of material fact that defeat Injury Assistance's cross motion for summary judgment on its breach of contract claim.

## V.   Interpleader and Supplemental Jurisdiction

### A.   Injury Assistance's Counter Claim for Breach of Contract

In its affirmative defense and counter claim, Injury Assistance asserts that it has lien rights against the settlement proceeds from Berrey's personal injury action.  As set forth above, the Court has not yet determined whether Injury Assistance has health care provider lien rights as the assignee or agent of the referred providers and has directed additional briefing on this issue.  However, the Court has found that Injury Assistance does not have lien rights against the settlement proceeds arising from its contract for medical services with Berrey, but that it may have a breach of contract claim.

---

[10]   The parties have not addressed any issues related to the validity of Injury Assistance's contract claim, such as the adequacy of the consideration or whether the claim is severable and would survive a ruling that the "lien" provisions of the contract are unenforceable.

[11]   The contract directed Berrey's attorneys to "pay such sums that may be due and owing for professional services provided by reason of the accident."  (Doc. 67, Ex. 3.)

1    If the Court finds that Injury Assistance does not have statutory health care

2    provider lien rights, Injury Assistance will not have a claim against the interpleaded

3    settlement funds.  *See Blankenbaker,* 71 P.3d at 911 (the health care provider lien statute

4    authorizes an action against those liable to the injured person, not against the injured

5    person); *See Lee v. West Coast Life Ins. Co.,* 688 F.3d 1004, 1009 (9th Cir. 2012)

6    ("interpleader protection generally does not extend to counterclaims that are not claims to

7    the interpleaded funds.")  In those circumstances, the Court's jurisdiction over Injury

8    Assistance's counter claim for breach of contract will be at issue.

9        Injury Assistance has alleged that the Court has "ancillary jurisdiction [over the

10   counter claim] pursuant to Rule 13(a), Federal Rules of Civil Procedure."  (Doc. 16 at 5,

11   ¶ 5.)  Thus, it appears that Injury Assistance is asserting that it has alleged a compulsory

12   counter claim under Rule 13(a) and that the Court should exercise supplemental

13   jurisdiction over that claim under 28 U.S.C. § 1367.[12]  "[W]hen the stakeholder is an

14   interested party and when one of the claimants asserts that the stakeholder is

15   independently liable to him, the interposition of a counterclaim is appropriate."  *Lee,* 688

16   F.3d at 1009.  However, to assert a counter claim under Rule 13, "the defendant in an

17   interpleader action who also counterclaims must still make some claim against the

18   interpleaded fund."  *Libby, McNeill, and Libby v. City Nat'l Bank,* 592 F.2d 504, 507 (9th

19   Cir. 1978).

20       Thus, if only Injury Assistance's counter claim for breach of contract remains, this

21   Court may not have jurisdiction or may decline to exercise supplemental jurisdiction over

22   that claim in this interpleader action.  Therefore, the Court directs the parties to submit

23   additional briefing on the Court's supplemental and interpleader jurisdiction over Injury

24   Assistance's breach of contract claim, in the event that is Injury Assistance's only

25

26

---

27   [12]  In 28 U.S.C. § 1367, Congress codified the doctrine of pendent and ancillary
     jurisdiction under the collective doctrine "supplemental jurisdiction."  *Rubinbaum, LLP,*
28   *v. Related Corp. Partners V, LP,* 154 F. Supp. 2d 481, 489 (S.D.N.Y. 2001).

1  remaining claim.  The Court is not directing supplemental briefing on the merits of Injury
2  Assistance's contract claim.

3       **B.     PIF's Citizenship and the Nature of its Claim**

4       Berrey also alleges that PIF has claimed an interest in the settlement proceeds.
5  (Doc. 15 at ¶¶ 1-6.)   PIF is the only claimant that Berrey alleges to have diverse
6  citizenship.  (*Id*. at ¶¶ 1-6.)  Berrey alleges that PIF "is a foreign company domiciled in
7  Michigan, which is licensed to conduct business in Arizona," and PIF admits this
8  allegation of its citizenship.  (*Id*. at ¶ 2; Doc. 35 at ¶ 1.)  Although PIF is a limited
9  liability company (LLC), the parties have not provided any information about the
10 citizenship of PIF's owners or members.  "In cases where entities rather than individuals
11 are litigants, diversity jurisdiction depends on the form of the entity."  *Johnson v.*
12 *Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006).  An LLC is treated
13 like a partnership for purposes of diversity jurisdiction and "is a citizen of every state of
14 which its owners/members are citizens."  *Id*.  Therefore, if any of PIF's owners or
15 members are citizens of Arizona, the Court will not have jurisdiction under the minimal
16 diversity requirements of 28 U.S.C. § 1335.  *See Lee,* 688 F.3d at 1008 (for statutory
17 interpleader there must be diversity between the adverse claimants).

18      Berrey also alleges that he "engaged PIF for three advances against any potential
19 excess proceeds he may be awarded as the result of his [personal injury action]," that PIF
20 advanced a total of $9,430.00, but "under the terms of the agreement for each
21 advancement" Berrey owes PIF $30,647.50.  (*Id*. at ¶¶ 40-42.)  The parties have not
22 submitted copies of the agreements between Berrey and PIF, and Berrey has not asserted
23 that its agreements with PIF are unenforceable as assignments of his personal injury
24 claim or the proceeds of that claim.  However, the nature of PIF's claims could affect the
25 Court's jurisdiction.  If PIF does not have a claim against the settlement proceeds, but
26 only has a contract claim, then it will not have an interpleader claim.  If PIF does not
27 have an interpleader claim, then there will not be a diverse claimant and the Court will
28 not have jurisdiction over this matter.

Therefore, because these issues potentially affect the Court's jurisdiction in this interpleader matter, the Court directs Berrey and PIF to submit briefing on (1) the citizenship of PIF's owners and members, and (2) the nature of PIF's claim against the settlement proceeds, including whether PIF's claim may be unenforceable as an assignment of a personal injury claim or the proceeds of that claim, submitting relevant documents.

Accordingly,

**IT IS ORDERED** that Berrey and Injury Assistance must submit additional briefing on Injury Assistance's affirmative defense asserting it has statutory health care provider lien rights as the assignee or agent of the referred providers.

**IT IS FURTHER ORDERED** that Berrey and Injury Assistance must submit additional briefing on the Court's supplemental and interpleader jurisdiction over Injury Assistance's breach of contract claim, in the event that is Injury Assistance's only remaining claim.

**IT IS FURTHER ORDERED** that no later than **April 20, 2015** Berrey and Injury Assistance must exchange, but not file, their supplemental briefs addressing (1) whether any of the referred providers properly perfected a health care provider lien, with copies of relevant documents, (2) whether any of the referred providers assigned any health care provider liens to Injury Assistance, again with relevant documents, (3) whether any of the referred providers entered agency agreements with Injury Assistance that authorized Injury Assistance to record liens on behalf of the referred providers or that authorized Injury Assistance to enforce any recorded health care provider liens, again with relevant documents, and (4) the Court's interpleader and supplemental jurisdiction over Injury Assistance's counter claim for breach of contract, in the event that is Injury Assistance's only remaining claim.   **IT IS FURTHER ORDERED** that after reviewing the opposing briefs, the parties shall file their supplemental briefs with the Court no later than **April 27, 2015**.  No responses or replies will be accepted.

1      **IT IS FURTHER ORDERED** holding in abeyance the portion of Berrey's
2  Motion for Summary Judgment (Doc. 66) on Injury Assistance's affirmative defense that
3  it has statutory lien rights in Berrey's settlement proceeds, and the portion of Injury
4  Assistance's cross motion for summary judgment on its affirmative defense that it has
5  statutory lien rights in Berrey's settlement proceeds (Doc. 72), pending the parties'
6  supplemental briefing.

7      **IT IS FURTHER ORDERED** that Berrey's Motion for Summary Judgment
8  (Doc. 66) on Injury Assistance's counter claim asserting contractual lien rights is
9  **GRANTED.**

10      **IT IS FURTHER ORDERED** that Berrey's Motion for Summary Judgment
11 (Doc. 66) on Injury Assistance's counter claim for breach of contract is **DENIED**.

12      **IT IS FURTHER ORDERED** that Injury Assistance's Cross-Motion for
13 Summary Judgment (Doc. 72) on its breach of contract claim is **DENIED**.

14      **IT IS FURTHER ORDERED** that Berrey and PIF must file briefing addressing
15 (1) the citizenship of PIF's owners and members, and (2) the nature of PIF's claim
16 against the settlement proceeds, including whether PIF's claim may be unenforceable as
17 an assignment of a personal injury claim or the proceeds of a personal injury claim, with
18 relevant documents.  **IT IS FURTHER ORDERED** that no later **April 20, 2015** Berrey
19 and PIF must exchange their briefs on these issues.  **IT IS FURTHER ORDERED** that
20 after reviewing the opposing briefs, the parties shall file their briefs with the Court no
21 later than **April 27, 2015**.  No responses or replies will be accepted.  After Berrey and
22 PIF file their briefs on these issues, Injury Assistance and Scottsdale Health Care may file
23 briefs responding to Berrey's and PIF's briefs by no later than **May 4, 2015**.

24      Dated this 30th day of March, 2015.

_____
Bridget S. Bade
United States Magistrate Judge