WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Berrey, | No. CV-14-00847-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Plaintiff Investment Funding, LLC, et al., | |
| Defendants. | |

Defendant Injury Assistance, LLC (Injury Assistance) has filed a Motion to Disgorge Michael Love's Attorney Fees. (Doc. 79.) Michael Love (Love) is counsel for Plaintiff Andrew Berrey (Berrey), who opposes the motion. (Doc. 80.) For the reasons set forth below, the Court denies the motion.

I.    **Background**

This is an interpleader action in which the parties assert conflicting claims to settlement proceeds that Berrey received in a personal injury action. (Doc. 15.) Berrey deposited the settlement proceeds into the Court's registry on June 23, 2014. (Doc. 25.) On October 27, 2014, Berrey, Injury Assistance, and Defendants Plaintiff Investment Funding, LLC (PIF) and Scottsdale Healthcare Corp., filed a Joint Stipulation for Entry of Judgment asking the Court to enter partial judgment in favor of Berrey for payment of his attorneys' charging lien for $11,549.98. (Doc. 62.) The Court granted the stipulated motion and ordered that $11,549.98 be disbursed from the interpleaded funds to Berrey's attorneys, and judgment was entered for Berrey in this amount. (Docs. 63, 64.)

Injury Assistance now asks the Court to order Berrey's attorney, Love, to disgorge the attorney's fees that the Court previously ordered disbursed based on the parties' joint stipulation.  (Doc. 79.)  The motion seeks disgorgement based on broad theories, including Love's alleged misconduct in obtaining the joint stipulation for disbursement of his attorney's fees from the settlement funds "under false pretenses," Love's alleged conflict of interest in representing Berrey in this case and representing PIF in an unrelated case in state court, and Love's alleged violation of fiduciary duties to Berrey and non-clients, including Injury Assistance.  (Doc. 79; Doc 82.)

Berrey opposes the motion, which he characterizes as an improper attempt to bring a claim against Love, a non-party, and he argues that the Court should find that Injury Assistance is estopped from seeking to disgorge the attorney's fees because it previously stipulated to the disbursement of these fees.  (Doc. 80 at 4-5, 10.)  Berrey also asserts he has properly safeguarded the settlement proceeds by depositing them in the Court's registry, Injury Assistance has no interest in the funds disbursed for his attorney's charging lien, his attorney, Love, does not have a fiduciary duty to Injury Assistance, and Injury Assistance cannot assert that Love has a conflict of interest because it is not his client.  (*Id.* at 5-6, 9-10.)  The Court first addresses Berrey's arguments asserting estoppel and characterizing the motion, and then addresses Injury Assistance's allegations that Love engaged in misconduct in obtaining the joint stipulation, that Love has a conflict of interest, and that he violated fiduciary duties.

## II. Estoppel and Characterization of Injury Assistance's Motion

### A. Judicial Estoppel Does Not Bar Injury Assistance's Motion

Relying on state law, Berrey argues that Injury Assistance is judicially estopped from its requested relief because Injury Assistance stipulated to the disbursement of the fees that are now at issue in the motion to disgorge.  (Doc. 80 at 10 (citing *State v. Towery*, 920 P.2d 290, 304 (Ariz. 1996).)  However, "federal law governs the application of judicial estoppel in federal court."  *Helfand v. Gerson*, 105 F.3d 530, 534 (9th Cir. 1997) (citation omitted).  Judicial estoppel, or the doctrine of preclusion of inconsistent

positions, "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Id.* (citations omitted.) "It is an equitable doctrine, intended to protect the integrity of the judicial process by preventing a litigant from 'playing fast and loose with the courts.'" *Id.* (citations omitted).

Here, Injury Assistance has changed its position with respect to the stipulated fee disbursement, but it does not appear that Injury Assistance is seeking to gain an unfair advantage by taking inconsistent positions.  Instead, as set forth below in Section III, Injury Assistance seeks to withdraw its assent to the joint stipulation because it asserts that it discovered misconduct by Love and was misled into entering the joint stipulation. (Doc. 82 at 2.)  It would be inappropriate to use the equitable doctrine of judicial estoppel to shield allegations of misconduct from review.  Therefore, the Court declines to apply judicial estoppel and will review the motion on its merits.

### B.     The Motion Does Not Assert a Claim Against Love

Berrey characterizes Injury Assistance's motion as asserting an independent "tort [claim] in the nature of a breach of fiduciary duty" against Love, and contends that this Court lacks jurisdiction over Love because he is not a party to the underlying action and has not been served with process.  (Doc. 80 at 5.)  Accordingly, Berrey argues that the motion must be summarily denied.   (*Id.*)   The Court disagrees with Berrey's characterization of the motion and does not construe the motion as asserting an independent claim against Love because the motion pertains directly to the Court's October 27, 2014 Order and Judgment.  (Doc. 79 at 3-4, ¶ 9; Doc. 63; Doc. 64.)

### C.     The Motion Seeks Relief from an Order and Judgment under Rule 60

By seeking to disgorge Love's attorney's fees, the motion effectively requests that the Court vacate its October 27, 2014 Order granting the parties' joint stipulation to disburse the attorney's fees (Doc. 63), and grant relief from the Order and Judgment (Doc. 64) by directing Love to deposit the previously disbursed funds in the Court's registry.  Therefore, although the parties do not assert that Rule 60 of the Federal Rules of

1   Civil Procedure applies to Injury Assistance's motion, the Court construes the motion as
2   a Rule 60 motion for relief from a judgment or order.

3       Rule 60(b)(3) provides that "[o]n motion . . . the court may relieve a party or a
4   party's legal representative from a final judgment, order, or proceeding for the following
5   reasons . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation, or
6   misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3).  Because the motion alleges
7   that Love committed various ethical violations and falsely induced the parties to enter the
8   joint stipulation to disburse attorney's fees, the Court assumes that Injury Assistance
9   alleges "misconduct by an opposing party" pursuant to Rule 60(b)(3).

10      To prevail on a Rule 60(b)(3) motion, the moving party must prove by clear and
11  convincing evidence that the judgment was obtained through misconduct, and that the
12  "conduct complained of prevented the losing party from fully and fairly presenting the
13  defense." *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000).
14  "Rule 60(b)(3) is aimed at judgments which were unfairly obtained, not those which are
15  factually incorrect." *Id.*  Therefore, the Court will consider whether Injury Assistance has
16  established by clear and convincing evidence that Berrey obtained the October 27, 2014
17  Order and Judgment through misconduct.

18  **III.   Alleged Misconduct to Obtain Judgment**

19      Injury Assistance asserts that Berrey, through Love, used false pretenses to obtain
20  the October 27, 2014 Order and Judgment, and that Love violated various ethical
21  obligations.  For the reasons below, the Court rejects these assertions.

22      **A.   Love Did Not Use "False Pretenses" to Obtain the Joint Stipulation**

23      Injury Assistance asserts that Love should be ordered to disgorge his attorney's
24  fees because Love did not disclose his representation of PIF in an unrelated state court
25  case.[1]  (Doc. 82 at 2.)  Injury Assistance argues that by not disclosing his representation
26  of PIF, Love obtained the joint stipulation for the disbursement of attorney's fees under
27
28          [1] The Court takes judicial notice of Maricopa County Superior Court case number
    CV2014-011941, which was filed on September 16, 2014.

false pretenses.  (*Id*.)   As set forth below, that argument lacks merit because Injury Assistance had notice of Love's representation of PIF in the unrelated state court case *before* entering the stipulation for the disbursement of funds and nothing in the record suggests that Love attempted to conceal his representation of PIF or mislead the parties in this case.

First, Injury Assistance is a party in the state court matter in which Love represents PIF.  In both the state court case and here, Injury Assistance is represented by George Griffeth.  (Doc. 72 at 39, Ex. 5.)   Because Griffeth and Love are counsel of record in both the state court case and here, Injury Assistance had notice of Love's dual representation prior to entering the joint stipulation in this case.

Second, the docket in both cases supports the conclusion that Injury Assistance had notice of Love's representation of PIF.  In the state court case, Love filed an answer on behalf of PIF on October 3, 2014, and Griffeth filed an answer on behalf of Injury Assistance on October 9, 2014.  (Doc. 72 at 39, Ex. 5.)   The parties filed the joint stipulation to disburse attorney's fees a few weeks later, on October 27, 2014.  (Doc. 62.) Thus, Injury Assistance had at least two weeks to object to Love's dual representation before filing the joint stipulation, but failed to do so.  (Doc. 72 at 39, Ex. 5.)

Third, other than Love's representation of PIF in the unrelated state court case, Injury Assistance has not asserted any basis to find that Love misled the parties or induced them to enter in the joint stipulation to disburse attorneys' fees under "false pretenses."  Because Love's role in both cases was a matter of public record, and Injury Assistance was a party in both cases and had the same counsel in both cases, there is nothing in the record to support Injury Assistance's claim that it was misled when it entered the joint stipulation in this case.

Therefore, the Court finds that Injury Assistance has failed to prove by clear and convincing evidence that the October 27, 2014 Order was obtained through false pretenses, or that Love's conduct prevented Injury Assistance from fully and fairly

1    presenting its case.  Accordingly, Love's alleged failure to disclose his representation of

2    PIF does not constitute misconduct for purposes of Rule 60(b)(3).

3          **B.      Love Did Not Violate His Ethical Obligations**

4          Injury Assistance also makes a number of claims regarding Love's representation

5    of Berrey and the extension of fiduciary duties from Love "to [Injury Assistance] and all

6    other claimants."  (Doc. 79 at 3-4.)   First, Injury Assistance objects to Love's

7    representation of Berrey on conflict of interest grounds.  (*Id.* at 3.)   Second, Injury

8    Assistance alleges that Love violated the Arizona Rules of Professional Conduct by

9    representing Berrey.  (*Id.* at 3-4.)  Third, Injury Assistance argues that Love violated his

10   fiduciary duties to Injury Assistance and the other claimants in this matter.  (*Id.*)   As

11   explained below, the Court rejects each of these arguments.

12         **1.      Injury Assistance Cannot Assert Love's Conflict of Interest**

13         Injury Assistance argues that Love's representation of Berrey in this case creates a

14   concurrent conflict of interest with Love's representation of PIF in an unrelated case in

15   state court.  (Doc. 79 at 3-5.)  In Arizona, only a lawyer's client is entitled to object to a

16   lawyer's representation based on a conflict of interest.  *State v. Garaygordobil*, 359 P.2d

17   753, 755 (Ariz. 1961) (citation omitted) ("the only ones entitled to object to such

18   representation on the ground of conflicting interests is one who holds the relation of

19   client to an attorney who undertakes to represent conflicting interests").  Therefore, the

20   threshold question before considering Injury Assistance's assertion of a conflict is

21   whether an attorney-client relationship exists between Love and Injury Assistance.

22         "An attorney-client relationship exists when a person has manifested to a lawyer

23   his intent that the lawyer provide him with legal services and the lawyer has manifested

24   consent to do so."  *Simms v. Rayes*, 316 P.3d 1235, 1238 (Ariz. Ct. App. 2014).  Nothing

25   in the record shows that Injury Assistance manifested to Love its intent that Love provide

26   legal services to it, or that Love manifested any intent to do so.  Love's only attorney-

27   client relationship in this case is with Berrey.  Because Injury Assistance does not have

28   an attorney-client relationship with Love, Injury Assistance cannot be prejudiced by

1    Love's representation of Berrey. *Garaygordobil*, 359 P.2d at 755. Thus, Injury

2    Assistance cannot assert a conflict of interest to object to Love's representation of Berrey.

3    *Id.*

4              **2.    Love May Represent Berrey and PIF in Unrelated Cases**

5              Assuming Injury Assistance could appropriately object to Love's representation of

6    Berrey based on a conflict of interest, its argument would still fail. As explained below,

7    although Love's dual representation of Berrey and PIF may create a concurrent conflict

8    of interest, both affected clients waived that conflict. Accordingly, Love has not violated

9    the applicable ethical rules by representing Berrey in this case.

10             The Arizona Rules of Professional Conduct (ethical rules), as set forth in Rule 42

11   of the Rules of the Arizona Supreme Court, apply to attorneys practicing before this

12   Court. *See* LRCiv 83.2(e); *Research Corp. Techs., Inc. v. Hewlett-Packard Co.*, 936 F.

13   Supp. 697, 700 (D. Ariz. 1996). Therefore, this Court applies the Arizona ethical rules

14   when evaluating potential conflicts of interest.

15             The ethical rules prohibit a lawyer from undertaking a representation involving a

16   concurrent conflict of interest. *See* ER 1.7(a). A concurrent conflict of interest exists if a

17   lawyer's representation of one client will be directly adverse to another client, or if there

18   is a significant risk that the lawyer's responsibilities to another client, a former client, a

19   third person, or the lawyer's personal interest will materially limit the lawyer's

20   representation. (*Id.*) From the limited record, it appears that Love's representation of

21   Berrey presents a concurrent conflict of interest because Berrey is directly adverse to PIF

22   in this case, and Love represents PIF in an unrelated state court case. *See* ER 1.7(a)(1).

23             Notwithstanding that apparent concurrent conflict of interest, the ethical rules

24   permit a lawyer's representation if "each affected client gives informed consent,

25   confirmed in writing," and all three elements of Rule 1.7(b) are satisfied. *See* ER 1.7(b).

26   Therefore, Love may represent Berrey in this matter because both Berrey and PIF have

27   waived the conflict of interest, and it appears that all three elements of ER 1.7(b) are

28

satisfied.[2]  The elements of ER 1.7(b) are that (1) the lawyer reasonably believes that he will be able to provide competent and diligent representation to each affected client, (2) the representation is not prohibited by law, and (3) the representation does not involve the assertion of a claim by one client against another client in the same case.  *See* ER 1.7(b)(1)-(3).

Here, Injury Assistance has not argued or established any basis for the Court to find that Love could not reasonably believe that he could provide competent and diligent representation to each of his affected clients.  *See* ER 1.7(b)(1).  Furthermore, Love's representation of Berrey is not prohibited by law, and he does not represent Berrey and PIF in the same litigation.  *See* ER 1.7(b)(2) − (3).  Therefore, the Court concludes that Love's representation of Berrey does not violate the ethical rules prohibiting concurrent conflicts of interest.

### 3.    Love Did Not Violate Duties to Injury Assistance

Injury Assistance makes four assertions regarding the duties it believes that Love owes to Injury Assistance and other claimants in this matter.  The Court rejects these assertions.  First, Injury Assistance argues that "Love, in addition to the fiduciary duty toward Berrey, has a fiduciary duty to Injury Assistance and all other claimants in this matter."  (Doc. 79 at 3.)  To support this argument, Injury Assistance cites ER 1.15(d), which provides that "[a] lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."  ER 1.15(a).  The comments to the rule note that a lawyer may have a duty to protect third party claims, "such as a client's creditor who has a lien on funds recovered in a personal injury action."  *Id.* at cmt 4.

Here, Berrey, through Love, apparently recognized the duty to protect the interest of the various claimants to the settlement proceeds and deposited those proceeds in the Court's registry.  (Doc. 25.)  The parties, however, filed a joint stipulation to disburse

---

[2]  Although Love has not submitted the written waivers by Berrey and PIF, the Court notes Love's undisputed declaration that he obtained written consent from both affected clients prior to his representation of Berrey.  (Doc 80 at 14.)

$11,549.98 from the deposited funds in payment of the attorneys' charging lien.  (Doc. 62.)   By entering the joint stipulation for the disbursement of Love's attorney's fees, Injury Assistance apparently recognized the priority of the attorneys' charging lien over its claim.  Other than its argument that Berrey falsely induced the parties to enter the joint stipulation to disburse attorneys' fees, Injury Assistance does not make any argument to challenge the validity of the attorneys' charging lien.  Therefore, Injury Assistance has not established that it has any interest in the funds disbursed to Love pursuant to the Court's October 27, 2014 Order or that Love violated any duty under ER 1.15(d) with respect to the disbursed attorney's fees.   The only funds in which Berrey, Injury Assistance, and the other parties may have an interest are the remaining settlement proceeds deposited in the Court's registry.  (Doc. 25.)  Love did not violate any fiduciary duties with respect to these funds.

Second, Injury Assistance asserts that "[n]either [Injury Assistance], nor any other party to this action, need be Love's client in order for a fiduciary duty, in their favor, to attach to Love's actions."  (Doc. 79 at 3, ¶8.)  In support of this proposition, Injury Assistance cites *Fickett v. Superior Court*, 558 P.2d 988 (Ariz. Ct. App. 1976).   In *Fickett*, the court analyzed whether a guardian's attorney owed a derivative duty to a ward.  *Id.* at 990. The duty recognized in *Fickett* "stem[med] from the attorney's undertaking to perform legal services for the client but reach[ing] out to protect the intended beneficiary" of the legal services.  *Id.* at 990.

In contrast to the shared interests of the ward and guardian in *Fickett*, Injury Assistance's interests are directly adverse to Berrey's.  Thus, Injury Assistance is not the intended beneficiary of Love's services.  *See Lewis v. Swenson*, 617 P.2d 69, 72 (Ariz. Ct. App. 1980) ("[A]n adverse party is not an intended beneficiary of the adverse counsel's client.") (citation omitted); *Wetherill v. Basham*, 3 P.3d 1118, 1128 (Ariz. Ct. App. 2000) (envisioning "no benefit and much potential mischief from imposing on attorneys a duty to exercise reasonable care to nonclient third parties whose interests are

1   directly adverse to those of the attorney's client").  Therefore, Love does not owe a duty
2   to Injury Assistance under an intended beneficiary theory.

3        Third, Injury Assistance argues that "[t]he potential for harm to all parties owed a
4   duty by Love is sufficient justification for an order mandating that Love disgorge his
5   entire fee in this matter because of his disloyalty and obvious breach of fiduciary duty."
6   (Doc. 79 at 3–4, ¶ 9.)  To support this argument, Injury Assistance cites a Texas case,
7   *Burrow v. Arce*, 997 S.W.2d 229, 237–38 (Tex. 1999).  The Court, however, is not bound
8   by authority from Texas, and *Burrow* does not stand for the proposition for which it is
9   cited.  Instead, *Burrow* holds that a lawyer who violates a duty to a client may be denied
10  compensation without proof of damages by the client.  *Id.* at 240.  Because Injury
11  Assistance is not Love's client, and Love has not violated any fiduciary duties to Injury
12  Assistance or any of the other parties, the Court finds that *Burrow* is inapplicable and
13  rejects this argument.

14       Finally, Injury Assistance argues that "Love's duties to all parties involved in this
15  matter include, without limitation, avoiding conflicts of interest, safeguarding funds owed
16  the client and/or third persons and a clear duty to honor the [sic] their interests."
17  (Doc. 79 at 4, ¶ 11.)  Injury Assistance's reliance on *Ulico Cas. Co. v. Wilson, Elser,*
18  *Moskowitz, Edelman & Dicker*, 843 N.Y.S.2d 749 (2007), is misplaced.  *Ulico* is a New
19  York case that did not involve the duties owed to non-clients or adverse parties, but rather
20  discussed the duties that exist between a lawyer and his current clients.  *Id.* at 759.
21  Again, because Berrey properly deposited the settlement funds in the Court's registry,
22  Love's fees were disbursed by Court order based on the parties' joint stipulation, Injury
23  Assistance is not Love's client, and Love did not violate any duties under ER 1.7 or ER
24  1.15, the Court is not persuaded by this argument.

25       In sum, Love did not violate any duty to Injury Assistance under ER 1.15(d), or
26  based on a theory that Injury Assistance is an intended beneficiary of Love's professional
27  services.   In addition, Injury Assistance and Love do not have an attorney-client

1  relationship.  Therefore, Injury Assistance cannot enforce against Love the various duties
2  that an attorney would owe to a client.

3  **IV.    Conclusion**

4        The Court construes Injury Assistance's motion to disgorge attorney's fees as a
5  Rule 60 motion for relief from a judgment or order and finds that Berrey, through his
6  attorney Love, did not engage in misconduct that warrants vacating the October 27, 2014
7  Order.  Therefore, the Court denies Injury Assistance's motion.

8        Accordingly,

9        **IT IS ORDERED** that Injury Assistance's Motion to Disgorge Michael Love's
10 Attorney's Fees, construed as a motion for relief from a judgment or order, (Doc. 79) is
11 **DENIED.**

12       Dated this 10th day of April, 2015.

13

14       _____

15                 Bridget S. Bade
                 United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25

26

27

28