WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Berrey, | No. CV-14-00847-PHX-BSB |
| Plaintiff, | **ORDER** |
| v. | |
| Plaintiff Investment Funding LLC, et al., | |
| Defendants. | |

Plaintiff Andrew Berrey and Defendant Injury Assistance, LLC have filed cross motions for summary judgment. (Doc. 66, 72.) On March 30, 2015, the Court entered an order related to these cross motions and directed the parties to file supplemental briefing on various issues. (Doc. 89.) In response, Defendant Plaintiff Investment Funding, LLC (PIF) filed a brief on April 27, 2015. (Doc. 95.) Berrey filed a joinder to PIF's brief. (Doc. 96.)

As set forth below, the Court strikes Sections III through V of PIF's brief because the arguments in these sections are not authorized by any rule or court order. In addition, because PIF and Berrey did not brief "the nature of PIF's claim against the settlement proceeds," they did not comply with the Court's order. Therefore, the Court orders PIF and Berrey to show cause why the Court should not dismiss PIF's claims to the interpleaded funds based on these violations of the Court's order and dismiss this interpleader action for lack of jurisdiction.

**I.    PIF's Unauthorized Arguments Related to Injury Assistance's Lien Claim**

In its March 30, 2015 Order, the Court ordered Berrey and Injury Assistance to "submit additional briefing on Injury Assistance's affirmative defense asserting it has statutory health care provider lien rights as the assignee or agent of the referred providers." (Doc. 89 at 22.) The Court further ordered Berrey and Injury Assistance to file supplemental briefing addressing:

> (1) whether any of the referred providers properly perfected a health care provider lien, with copies of relevant documents, (2) whether any of the referred providers assigned any health care provider liens to Injury Assistance, again with relevant documents, [and] (3) whether any of the referred providers entered agency agreements with Injury Assistance that authorized Injury Assistance to record liens on behalf of the referred providers or that authorized Injury Assistance to enforce any recorded health care provider liens, again with relevant documents, . . . ."

(*Id.*) The Order set deadlines for Berrey and Injury Assistance to exchange their briefs on these issues before filing. (*Id.*) The Court did *not* order or authorize any other party, including PIF, to file briefing on these issues, and did not order any other party to exchange briefing with Berrey and Injury Assistance on these issues. (*Id.*) The Court clearly identified these issues as arising from Berrey's and Injury Assistance's cross motions for summary judgment. (*Id.* at 10, 12-13.) Thus, the Court's March 30, 2015 Order did not direct or authorize PIF to file briefing on these issues. Nonetheless, PIF's brief included argument on these issues. (Doc. 95 at 3-7.)

PIF did not identify any rule or authority that would allow it to file briefing on issues raised in cross motions for summary judgment that were filed by other parties, that PIF did not join, and after the conclusion of briefing on these motions. Local Rule 56.1 authorizes a motion, response, and reply. *See* LRCiv 56.1. Rule 56 authorizes the Court to direct additional briefing, but it does not authorize the parties to file additional or supplemental briefing beyond the briefing the Court's order required. *See* Fed. R. Civ. 56(f). Thus, PIF's briefing on issues related to Injury Assistance's lien claim was not

- 2 -

authorized by any rule.  Therefore, the Court strikes Sections III through V of PIF's brief and will not consider the arguments in these sections.  (Doc. 95 at 3-7.)

## II. Order to Show Cause Why the Court Should Not Strike PIF's Claims

### A. PIF and Berrey Did Not Comply with the Court's Order

In its March 30, 2015 Order, the Court directed PIF and Berrey to file "briefing addressing (1) the citizenship of PIF's owners and members, and (2) the nature of PIF's claim against the settlement proceeds, including whether PIF's claim may be unenforceable as an assignment of a personal injury claim or the proceeds of a personal injury claim, with relevant documents."[1]  (Doc. 89 at 22, 23.)  The Court explained that it raised these issues *sua sponte* because they implicated the Court's jurisdiction.  (*Id.* at 2.)  In addition, the Court stated its concern that the parties had not submitted the agreements between Berrey and PIF that purportedly formed the basis of PIF's claim against the settlement proceeds of Berrey's personal injury claim, which had been deposited in the Court's registry.  (*Id*. at 21.)  The Court further explained that "the nature of PIF's claims could affect the Court's jurisdiction.  If PIF does not have a claim against the settlement proceeds, but only has a contract claim, then it will not have an interpleader claim."  (*Id.*)

Despite the Court's clear order, and its explanation for the order, PIF did not submit any briefing addressing "the nature of [its] claim against the settlement proceeds, including whether [its] claim may be unenforceable as an assignment of a personal injury claim or the proceeds of a personal injury claim."  (*See* Doc. 89, 95.)  In addition, PIF did not submit any agreements with Berrey that formed the basis of its claim to the interpleaded funds.  Berrey also did not brief this issue and instead filed a "joinder" to PIF's brief in which he stated only that "PIF has an interest in the funds in interpleader."  (Doc. 96.)  Therefore, PIF and Berrey did not comply with the Court's Order.

### B. Berrey's and PIF's April 2015 Settlement Agreement

Instead, PIF filed a brief stating that it has "confidence in the validity of its agreements," but "recognizes a ruling that declared PIF's agreement with Mr. Berrey

---

[1] PIF's brief addressed the citizenship of its members.  (Doc. 95 at 1-2.)

- 3 -

void was a possible outcome of the litigation." (Doc. 95 at 2.) Therefore, the day after the Court's March 30, 2015 Order, PIF and Berrey entered a settlement agreement that purported to "supersede all previous agreements between PIF and Mr. Berrey" and in which Berrey would "assign[] any present interest he has in the interplead funds to PIF." (*Id*. at 3.) PIF does not explain how this settlement agreement, which appears to be an attempted end run around the Court's Order and Arizona law prohibiting the assignment of personal injury claims, responds to the Court's order to address the "nature of PIF's claims against the settlement proceeds." Nor does PIF's brief explain the basis of its "claim for $30,000" that the settlement agreement purports to release. (*See id*. at 2-3.) However, PIF asserts that, based on the settlement agreement, it has a "present interest in Mr. Berrey's interplead settlement proceeds." (*Id.* at 3.)

The settlement agreement explains that Berrey entered a loan agreement with PIF, that "certain provisions of that agreement proved to be unworkable and undesirable," that the Court had ordered "PIF to demonstrate an interest in the proceeds held in the Court's registry," and therefore to resolve Berrey's "debt," he agreed to:

> sells, transfers and assigns his ownership interest, if any, in the proceeds held in the Court's registry in connection with the Interpleader, in which Berrey has any ownership interest, up to $12,000.00 as full and final payment of the loan amount due and owing under the accord and satisfaction or otherwise.

(Doc. 95, Ex. 3). The settlement agreement also states that it is intended to resolve "the right, title or interest in any monies held in Interpleader to which Berrey or PIF may have an interest." (*Id.*)

To the extent the April 2015 settlement agreement attempts to create any rights or interest to the proceeds of Berrey's personal injury claim for PIF, it is an unenforceable assignment.[2] As the Arizona Supreme Court explained in *Druke*, if an asserted right of

---

[2] As set forth in the Court's March 30, 2015 Order (Doc. 89 at 13-15), under Arizona law, personal injury claims and the proceeds of such claims are not assignable. *See Brockman v. Metro Life. Ins. Co.,* 609 P.2d 61, 63 (Ariz. 1980); *Allstate Ins. Co. v. Druke*, 576 P.2d 489, 491-92 (Ariz. 1978); *State Farm Mut. Ins. Co. v. St. Joseph's Hosp.,* 489 P.2 837, 842 (Ariz. 1971); *Lingel v. Oblin*, 8 P.3d 1163, 1168 (Ariz. Ct. App. 2000); *Piano v. Hunter,* 840 P.2d 1037, 1040-41 (Ariz. Ct. App. 1991); *Karp v. Speizer,* 647 P.2d 1197, 1199 (Ariz. Ct. App. 1982).

reimbursement "create[s] an interest in any recovery against a third party for bodily injury . . . [it] is the legal equivalent of an assignment and therefore unenforceable." *Druke,* 576 P.2d at 492. PIF attempts to avoid this result by arguing that the April 2015 settlement agreement is a "novated settlement agreement" that is permissible under Arizona law, and the Court's March 30, 2015 Order, because "PIF is not asserting an assigned interest in the personal injury proceeds," but rather the agreement authorizes Berrey's attorney, Love, to "collect up to that sum [$12,000] from the interplead funds." (*Id.* at 3.) Thus, PIF asserts this agreement is permissible under *St. Joseph's Hospital*, and the portion of the Court's March 30, 2015 Order addressing that opinion.

In *St. Joseph's Hospital*, the court found that an agreement for an attorney to pay medical bills from money that may become payable from a personal injury claim was not an assignment because it did *not* create an interest for the medical providers in the proceeds of the plaintiff's personal injury claim. 489 P.2d at 842. Instead, it authorized a specific attorney, named in the agreement, to act as a collecting agent for the medical providers. *Id.* at 838. As the court explained, the agreement did not create an assignment because it authorized only the named attorney to act as a collecting agent and if the plaintiff discharged that specific attorney, the medical providers would have no interest in the settlement proceeds.[3] *Id.* at 842. Thus, under *St. Joseph's Hospital*, an agreement for an attorney to act as a collecting agent would only be permissible, and not an unenforceable assignment, if that agreement created no interest or right for the payee in

---

[3] In *St. Joseph's Hospital*, the medical providers sued the insurance company that paid the settlement of their patient's personal injury claim. The medical providers were not asserting lien rights or claiming an interest in the settlement proceeds. Instead, they asserted a claim for tortious interference with the attorney-client relationship. 489 P.2d at 840. As a matter of first impression, the court found that this cause of action existed. *Id.* The medical providers alleged that although the insurance company knew the patient was represented by counsel, its claims adjuster communicated directly with the patient, who was very ill, without her attorney present, and convinced her to sign a letter discharging her attorney, and then negotiated a settlement with her that was less than an amount she had previously rejected through her attorney. *Id.* at 838-39. The defendant insurance company asserted that the medical providers' claim should fail because it must arise from a reading of the contract between the patient and her attorney as an assignment of her cause of action. *Id.* at 842. The court found that the agreement was not an assignment because if the patient had discharged her attorney without interference, the providers would not have an interest in the settlement. *Id.*

- 5 -

the proceeds of the personal injury claim. *See Druke,* 576 P.2d at 492; *St. Joseph's Hosp.,* 489 P.2d at 842.

Therefore, PIF's argument based on *St. Joseph's Hospital,* that the April 2015 settlement agreement authorizes Berrey's attorney to act as a "collecting agent," does not establish that the settlement agreement is not an assignment. Indeed, PIF's and Berrey's April 2015 settlement agreement is distinguishable from the agreement in *St. Joseph's Hospital* because it authorizes "Berrey's counsel," not limited to any particular attorney, to act as a collecting agent for PIF.[4] (Doc. 95, Ex. 3 at ¶ 3.) In contrast, in *St. Joseph's Hospital*, the court found that the agreement was not an assignment because it was limited to a particular attorney acting as a collecting agent and the providers would have no claim if that attorney were discharged. Here, there is no such limitation.

In addition, the settlement agreement authorizes Berrey's counsel, "or the Court," to "pay the amount due to PIF from the proceeds in interpleader." (*Id.*) The settlement agreement also includes a provision labeled "Transfer of Ownership Interests and Payment" in which Berrey "sells, transfers and assigns all of his ownership interest" in the settlement proceeds, up to $12,000, "as full and final payment of the loan amount due and owing." (*Id.* at ¶ 1.) Thus, it appears PIF is asserting it has rights to the interpleaded funds. The agreement in *St. Joseph's Hospital* did not contain similar provisions that purported to create rights to the patient's settlement proceeds for the medical providers. Thus, PIF's and Berrey's April 2015 settlement agreement is not simply limited to authorizing a specific attorney to act as a collecting agent and is distinguishable from the agreement in the *St. Joseph's Hospital*.

PIF also attempts to validate its settlement agreement with Berrey, and distinguish it from Injury Assistance's contract with Berrey, by asserting that "Berrey never

---

[4] Although PIF asserts that the settlement agreement authorizes Berrey's current attorney Michael Love to act as its collecting agent (Doc. 95 at 3), the settlement agreement does not specify that only Love is authorized to act as a collecting agent and instead states that "Berrey's counsel," without any identification or limitation, is "authorized to pay the amount due to PIF from the proceeds in Interpleader." (Doc. 95, Ex. 3 at ¶ 3.)

- 6 -

1 authorized Michael Love or any other custodian of funds to act as [Injury Assistance's]
2 'collecting agent.'" (*Id.*) This argument fails, however, because it is directly
3 contradicted by the language of the contract between Berrey and Injury Assistance, which
4 provides that "[t]he undersigned patient authorizes and directs the attorney below and any
5 other attorneys retained in the future to directly pay such sums that may be due and
6 owing for professional services provided by reason of the accident, and to withhold such
7 sums from any settlement, judgment, collateral source, or verdict." (Doc. 89 at 3-4, n.4
8 (quoting Doc. 67, Ex. 3).) The contract between Berrey and Injury Assistance further
9 provides that "[t]he undersigned patient further directs said attorney(s) to pay 'IN FULL'
10 all amounts owed to Injury Assistance and its contract providers . . . ." (*Id.*) Thus, in his
11 contract with Injury Assistance, Berrey authorized his attorneys to act as collecting
12 agents for Injury Assistance.

13 The Court finds, however, that the provisions in the Injury Assistance contract and
14 the PIF settlement agreement authorizing attorneys to act as collecting agents do not
15 determine whether the agreements are unenforceable assignments. Instead, to the extent
16 these contracts purport to provide Injury Assistance and PIF with rights to the proceeds of
17 Berrey's personal injury claim, they are unenforceable assignments. *See Druke,* 576 P.2d
18 492. As set forth above, the *St. Joseph's Hospital* decision does not require a different
19 result because in that case the court found that an agreement for the attorney to pay the
20 plaintiff's medical bills was not an assignment because the agreement gave the medical
21 providers no interest in the proceeds of the personal injury claim. 489 P.2d at 842.
22 Therefore, if Berrey's and PIF's April 2015 settlement agreement creates an interest or
23 right to the proceeds of Berrey's personal injury claim for PIF, it is an unenforceable
24 assignment.

25 PIF also attempts to distinguish its April 2015 settlement agreement from Injury
26 Assistance's contract with Berrey by arguing that Injury Assistance, unlike PIF, did not
27 "reach an agreement with Berrey after his receipt of the settlement proceeds," and
28 therefore PIF is entitled to a "limited assignment." (Doc. 95 at 4, n.2.) As previously

1    noted, the Court finds that the April 2015 settlement agreement, signed the day after the
2    Court's March 30, 2015 Order directing Berrey and PIF to brief the nature of PIF's claim
3    to the settlement proceeds, is apparently an attempted end run around the Court's order
4    and Arizona law.  PIF cannot alter the nature of its claim to the settlement proceeds, or
5    make its earlier agreements enforceable, simply by entering another agreement with
6    Berrey during the pendency of this interpleader action.[5]

7           Alternatively, if the settlement agreement does not create an interest for PIF in the
8    settlement proceeds of Berrey's personal injury claim, and PIF has no other basis to
9    assert a claim to these funds, which are the subject of this interpleader action, then PIF
10   does not have a claim in interpleader and instead may have a contract claim.  The Court
11   would not have jurisdiction over this contract claim, in which the amount in controversy
12   is $30,000.  *See* 28 U.S.C. § 1332(a).  Furthermore, as explained in the Court's March 30,
13   2015 Order, if PIF does not have interpleader claim, then the Court does not have
14   jurisdiction over this matter because PIF is the only alleged diverse claimant.  (Doc. 89 at
15   21); *see also* 28 U.S.C. § 1335.

16          Berrey's and PIF's failure to comply with the Court's March 30, 2015 Order, and
17   brief "the nature of PIF's claim against the settlement proceeds, including whether PIF's
18   claim may be unenforceable as an assignment of a personal injury claim or the proceeds
19   of that claim," seriously impedes the processing of this case.  Therefore, the Court may
20   dismiss PIF's interpleader claims pursuant to Federal Rule of Civil Procedure 41(b).  *See*
21   *Link v. Wabash R.R. Co*., 370 U.S. 626, 629-31 (1962) (recognizing that a federal district
22   court has the inherent power to dismiss a case *sua sponte* under Rule 41(b)).

23          Based on Berrey's and PIF's violation of the Court's March 30, 2015 Order, the
24   Court orders Berrey and PIF to show cause why the Court should not dismiss PIF's
25   claims to the interpleaded funds, and dismiss this matter for lack of jurisdiction.  *See* Fed.

---

[5] The settlement agreement purports to resolve Berrey's $30,000 debt to PIF. That debt arises from the 2011 loan agreements between PIF and Berrey.  If those agreements are unenforceable assignments of Berrey's personal injury claim, the parties cannot enter a settlement agreement that allows PIF to assert the same interest (debt arising from the loan agreements) to the proceeds of Berrey's personal injury claim.

- 8 -

R. Civ. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.")  Berrey's and PIF's responses to this order to show cause must include copies of PIF's loan agreements with Berrey.  In addition, Berrey's and PIF's responses must address the loan agreements between Berrey and PIF.  The Court will not consider any additional argument based on the April 2015 settlement agreement.  If Berrey and PIF do not respond to this Order by **May 18, 2015**, the Court will enter an order dismissing PIF's claims and will dismiss this matter for lack of jurisdiction.

Accordingly,

**IT IS ORDERED** that the Court strikes Sections III through V in PIF's brief (Doc. 95 at 3-7) and will not consider the arguments in these sections.

**IT IS FURTHER ORDERED** that by **May 18, 2015**, Berrey and PIF must show cause why the Court should not dismiss PIF's interpleader claims for failure to comply with the Court's March 30, 2015 Order, and thus dismiss this matter for lack of jurisdiction.  Berrey's and PIF's responses must include copies of PIF's loan agreements with Berrey and must address those agreements.

Dated this 4th day of May, 2015.

_____
Bridget S. Bade
United States Magistrate Judge