WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Andrew Berrey,<br><br>   Plaintiff,<br><br>v.<br><br>Plaintiff Investment Funding LLC, et al.,<br><br>   Defendants. | No. CV-14-00847-PHX-BSB<br><br>**ORDER** |

This in an interpleader action in which Plaintiff Andrew Berrey asserts jurisdiction under 28 U.S.C. § 1335.[1] (Doc. 15 at ¶ 6.) Berrey has deposited funds in the Court's registry and asserts that there are conflicting claims to these funds and therefore he may be exposed to multiple liability if the Court does not determine the correct claimants. (*Id.*)

As set forth below, Berrey does not face multiple liability to the deposited funds based on claims from diverse claimants. Instead, two of the claimants, Plaintiff Investment Funding, LLC (PIF), and Injury Assistance, LLC (Injury Assistance), have potential contract claims against Berrey, but do not have claims to the deposited funds. The Court's conclusion that PIF and Injury Assistance do not have claims against the deposited funds does not resolve Berrey's potential contract liability to these claimants.

---

[1] For statutory interpleader under § 1335, Plaintiff must establish "minimal diversity," or "diversity of citizenship between two or more claimants, without regard to the circumstance that other rival claimants may be co-citizens." *See State Farm Fire & Cas. Co. v. Tashire,* 386 U.S. 523, 530 (1967). In addition, under statutory interpleader, the amount in controversy requirement is only $500. 28 U.S.C. § 1335.

The Court, however, does not have federal question or diversity jurisdiction over these contract claims. *See* 28 U.S.C. §§ 1331, 1332.

The third claimant, Scottsdale Healthcare Corporation, is an Arizona corporation doing business in Arizona, and Berrey resides in Arizona. (Doc. 15 at ¶¶ 1, 4.) Therefore, Berrey and Scottsdale Healthcare are not diverse claimants and the Court does not have jurisdiction over an interpleader claim between Berrey and Scottsdale Healthcare under § 1335. *See State Farm,* 386 U.S. at 530. Because the Court does not have original jurisdiction over the any of the parties' claims, it cannot exercise supplemental jurisdiction over the potential contract claims. *See* 28 U.S.C. § 1367. Therefore, the Court will dismiss this matter with prejudice.

**I.     Procedural Background**

In his First Amended Complaint in Interpleader, Berrey alleges that "there are actual conflicting claims to certain settlement proceeds payable to [him] by reason of the settlement of a claim for bodily injury." (*Id*. at 2, ¶ 8.) Berrey deposited $30,000 in settlement proceeds in the Court's registry. (Docs. 25, 27, and 112.) The parties later stipulated to the disbursement of $5,500 from the settlement proceeds to Defendant Dignity Health, Inc., d/b/a Mercy Gilbert Hospital. (Docs. 43, 57, and 58.) The parties also stipulated to the disbursement of $11,549.98 to Berrey for payment of his attorney's charging lien.[2] (Docs. 62, 63 and 64.) Thus, $12,950.02 of the settlement proceeds remain in the Court's registry.

**A.     Berrey's and Injury Assistance's Motions for Summary Judgment**

Plaintiff Berrey and Defendant Injury Assistance filed cross motions for summary judgment.[3] (Docs. 66, 72.) In his motion, Berrey argued that Injury Assistance cannot assert a claim against the settlement proceeds based on a health care provider lien, or

---

[2] The parties subsequently disputed this disbursement. Injury Assistance filed a motion to disgorge attorney's fees (Doc. 79), which the Court denied. (Doc. 93.) In response, Berrey filed a motion for sanctions (Doc. 84), which the Court also denied. (Doc. 110.)

[3] The factual and procedural background for the cross motions for summary judgment is set forth in the Court's order on those motions. (Doc. 89.)

- 2 -

assert a claim against these proceeds based on the parties' contract for medical services. Berrey argued that under Arizona law such claims are barred as an unenforceable assignment of the proceeds of his personal injury claim. (Doc. 66 at 4, 9.) Therefore, Berrey argued that he is entitled to summary judgment on Injury Assistance's affirmative defense that it has health care provider lien rights, and on Injury Assistance's counterclaim for breach of contract. (Doc. 66 at 5-7.)

In its opposition to Berrey's motion and in its cross motion for summary judgment, Injury Assistance argued that it has lien rights to the settlement proceeds as the agent or assignee of Berrey's health care providers, and that it also has an enforceable contract with Berrey for payment for medical services. (Doc. 72 at 8-9.) Thus, Injury Assistance argued that Berrey's motion should be denied and that the Court should enter summary judgment for Injury Assistance on its counterclaim for breach of contract. (Doc. 72 at 9.)

### B. The Court's Order on the Motions for Summary Judgment

The Court entered an order related to these cross motions, partially granting and denying the motions. (Doc. 89.) The Court found that the contract for medical services between Berrey and Injury Assistance contained lien provisions that attempted to create a legally enforceable interest for Injury Assistance in any recovery from Berrey's personal injury claim. (*Id.* at 16.) The Court found that the lien provisions of the contract were unenforceable under Arizona law as a prohibited assignment of Berrey's personal injury claim.[4] (*Id.* (citing *Druke*, 576 P.2d at 492 (Ariz. 1978)).) Therefore, the Court entered summary judgment in Berrey's favor on Injury Assistance's counterclaim to the extent that claim asserted lien rights against the settlement proceeds of Berrey's personal injury claim. (*Id.*)

---

[4] As set forth in the Court's order on the cross motions for summary judgment (Doc. 89 at 13-15), under Arizona law, personal injury claims and the proceeds of such claims are not assignable. *See Brockman v. Metro Life. Ins. Co.,* 609 P.2d 61, 63 (Ariz. 1980); *Allstate Ins. Co. v. Druke*, 576 P.2d 489, 491-92 (Ariz. 1978); *State Farm Mut. Ins. Co. v. St. Joseph's Hosp.,* 489 P.2d 837, 842 (Ariz. 1971); *Lingel v. Oblin*, 8 P.3d 1163, 1168 (Ariz. Ct. App. 2000); *Piano v. Hunter,* 840 P.2d 1037, 1040-41 (Ariz. Ct. App. 1991); *Karp v. Speizer,* 647 P.2d 1197, 1199 (Ariz. Ct. App. 1982).

However, the Court also found that the contract included reimbursement provisions that were independent of Berrey's personal injury claim and were not based on a lien against the proceeds of that claim. (*Id*. at 17 (citing *Blankenbaker v. Jonovich,* 71 P.3d 901, 915 (Ariz. 2003)).) The Court found that these contractual reimbursement rights were not an assignment of Berrey's personal injury claim and therefore denied Berrey's motion for summary judgment on Injury Assistance's counterclaim for breach of contract. (Doc. 89 at 18.) The Court also denied Injury Assistance's motion for summary judgment on its counterclaim for breach of contract because Injury Assistance had not established an undisputed factual basis from which the Court could enter summary judgment in its favor. (*Id*. at 18-19.)

The Court also addressed Injury Assistance's affirmative defense that it has health care provider lien rights as the agent or assignee of the health care providers, but did not decide whether a health care provider lien could be assigned or whether an agent authorized to record a lien for a health care provider had any rights to enforce the lien. (*Id*. at 9-10, n.9.) The Court concluded that even if Injury Assistance could assert health care provider lien rights as the agent or assignee of Berrey's medical providers, it would only have the rights of those providers. (*Id*. at 10 (citing *K.B. v. State Farm Fire and Cas. Co.,* 941 P.2d 1288, 1292 (Ariz. Ct. App. 1997)).) However, the Court could not determine from the parties' motions whether the medical providers properly perfected health care provider liens, assigned such lien rights to Injury Assistance, or authorized Injury Assistance to act as their agent to record and enforce liens. Therefore, the Court ordered Injury Assistance and Berrey to provide supplemental briefing on these issues and to submit copies of any relevant documents. (Doc. 89 at 12-13.)

Additionally, the Court concluded that if Injury Assistance did not have health care provider lien rights as the assignee or agent of the medical providers, then Injury Assistance would not have a claim against the interpleaded settlement funds, but would only have a breach of contract claim. (*Id*. at 20.) Therefore, the Court also ordered Berrey and Injury Assistance to provide supplemental briefing on the Court's

supplemental jurisdiction over Injury Assistance's possible breach of contract claim. (*Id.*)  As directed, Berrey and Injury Assistance filed supplemental briefing on these issues.  (Docs. 97, 98.)

Finally the Court raised issues with PIF's claims.  Although PIF is a limited liability company, and is the only claimant that Berrey alleged to have diverse citizenship, the parties had not addressed the citizenship of PIF's owners or members. (Doc. 89 at 21 (citing *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006)).)  Furthermore, the parties had not submitted copies of the agreements between PIF and Berrey, which purportedly formed the basis of PIF's claim to the settlement proceeds, and Berrey had not asserted that its agreements with PIF were unenforceable as assignments of his personal injury claim.  (Doc. 89 at 21.)

The Court noted that PIF could have a claim against the settlement proceeds, or that it could have only a contract claim against Berrey, and the nature of PIF's claim could affect the Court's jurisdiction.  Therefore, the Court ordered Berrey and PIF to provide supplemental briefing on the citizenship of PIF's owners or members and on the nature of PIF's claim against the settlement proceeds, including whether PIF's claim may be unenforceable as an assignment of a personal injury claim.  (*Id*. at 21-22.)  The Court also directed the parties to submit copies of the relevant documents.

In response, PIF filed a brief and supporting affidavit addressing the citizenship of its members.  (Doc. 95 at 1-2, Ex. 1.)  From this information, the Court finds that PIF's members are not citizens of Arizona and therefore PIF is a diverse claimant.  However, PIF and Berrey did not file supplemental briefing addressing the nature of PIF's claims against the settlement proceeds and did not submit copies of the agreements between Berrey and PIF that purportedly formed the basis of PIF's claim against the settlement proceeds.  (Docs. 95, 96, 107.)  Instead, PIF filed a brief stating that the day after the Court's order directing the parties to file supplemental briefing, PIF and Berrey entered a "novated" settlement agreement that "supersedes all previous agreements between PIF and Mr. Berrey" and in which Berrey "assigns any present interest he has in the

1 interplead funds to PIF."[5]  (Doc. 95 at 2-3. Ex. 2.)  Berrey filed a joinder to PIF's brief. (Doc. 96.)

The Court reviewed the novated settlement agreement, and PIF's and Berrey's arguments, and found that if the novated settlement agreement created a legally enforceable interest for PIF in the settlement proceeds then it would be unenforceable as an assignment of Berrey's personal injury claim.  (Doc. 107 at 4-7 (citing *Brockman,* 609 P.2d at 63; *Druke*, 576 P.2d at 491-92; *St. Joseph's Hosp.,* 489 P.2d at 842; *Lingel*, 8 P.3d at 1168; *Piano,* 840 P.2d at 1040-41; *Karp,* 647 P.2d at 1199).)  Alternatively, the Court found that if the novated settlement agreement did not create an interest for PIF in the settlement proceeds, and if PIF had no other basis to assert a claim to these funds, then PIF would not have a claim in interpleader, but could have a contract claim.  (Doc. 107 at 8.)

Because PIF and Berrey did not comply with the Court's order on supplemental briefing, the Court issued an order to show cause, which provided them another opportunity to file supplemental briefing addressing the basis of PIF's claim to the settlement proceeds.[6]  (*Id.* at 8-9.)  The Court stated that "Berrey's and PIF's responses to this order to show cause must include copies of PIF's loan agreements with Berrey.  In addition, Berrey's and PIF's responses must address the loan agreements between Berrey and PIF.  The Court will not consider any additional argument based on the [novated] settlement agreement."  (*Id.* at 9.)  PIF and Berrey filed a joint response to the order to show cause.  (Doc. 113.)

**II.  Injury Assistance's Asserted Lien Rights to the Settlement Funds**

As previously stated, the Court ordered Berrey and Injury Assistance to file

---

[5] A novation extinguishes the previous agreement. *See Dunbar v. Steiert,* 253 P. 1113, 1114 (Ariz. 1927) (novation requires the extinguishment of the old contract); *Cely v. DeConcini, McDonald, Brammer, Yetwin & Lacy, P.C.,* 803 P.2d 911, 912 n.2 (Ariz. Ct. App. 1990) (a novation extinguishes the old obligation by substituting a new one.); 58 Am. Jur. 2d *Novation* § 19 (2015) (in a novation, the previous agreement is extinguished).

[6] PIF's brief also included unauthorized arguments related to Injury Assistance's claim, which the Court ordered stricken and does not consider. (Doc. 107 at 2.)

- 6 -

1 supplemental briefing addressing whether the referred providers properly perfected health care provider liens, or assigned such lien rights to Injury Assistance, or authorized Injury Assistance to act as their agent to record and enforce liens.[7]  (Doc. 89 at 12-13.)  The Court also directed the parties to submit relevant documents to support their positions on these issues.

Although Injury Assistance filed a supplemental brief addressing the issues set forth in the Court's order, it did not submit any health care provider liens that the referred providers had filed with the county recorder in accordance with the perfection provisions of Ariz. Rev. Stat. § 33-932.  *See Blankenbaker,* 71 P.3d at 914 (health care provider lien must be properly perfected to be enforceable).  As set forth below, Injury Assistance also did not submit any agency agreements in which the referred providers authorized Injury Assistance to file and enforce health care provider liens on their behalf, or any assignments or agreements in which the referred providers assigned any lien rights to Injury Assistance.

### A.   Right to File and Enforce Liens as the Agent of the Providers

In response to the Court's order directing supplemental briefing, Injury Assistance submitted seventeen agreements it had entered with the referred providers, which are each identified as "Notice of Sale and Agreement" (Agreements).  (Doc. 98, Ex. 1.)  These Agreements are identical, except for the identity of the referred provider, the date signed, and the amount of the account at issue.  In each Agreement, the provider sells and assigns all of its "rights, title, and interest" in an account to Injury Assistance.[8]  (*Id.*)  Relying on these Agreements, generally and without citation to any specific language, Injury Assistance argues that "[e]very provider that treated Berrey named IA as its agent."  (Doc. 98 at 2 (citing Ex. 1).)  However, contrary to that assertion, the

---

[7] Consistent with the parties' cross motions for summary judgment, and its earlier order, the Court refers to Berrey's medical providers collectively as the referred providers.  (Doc. 89 at 5 n.6.)

[8] Plaintiff submitted two of these Agreements with the cross motions for summary judgment.  (Doc. 77, Ex B.)  The Court addressed these Agreements in its order on the motions.  (Doc. 89 at 6, 12.)

- 7 -

Agreements do not include any language from which the Court could find that the providers named Injury Assistance as their agent. *See id.*

Therefore, the Court finds that the referred providers and Injury Assistance did not enter an agency relationship through these Agreements. Instead, in these Agreements the providers sold their rights to medical accounts to Injury Assistance. As Injury Assistance acknowledges, "the medical providers decided to sell and assign their accounts receivable to IA." (Doc. 98 at 4.) Therefore, the Court finds that these Agreements authorized Injury Assistance to collect on these accounts, but did not authorize Injury Assistance to file or enforce liens on behalf of the referred providers.

Injury Assistance also asserts that every provider entered a contract providing that "NHF shall act as an agent of behalf of Medical Provider so as to record the lien and assignment in the county or other appropriate recording office as required." (*Id.* at 5.) Injury Assistance did not submit a copy of any contract with this provision or a sworn statement setting forth any such contract provision. In addition, the quoted language refers to "NHF," not Injury Assistance, and Injury Assistance provides no other information, such as the relevant time period that these contracts were purportedly in effect. Therefore, the Court finds that there is no competent evidence to support Injury Assistance's assertion it entered contracts to act as the providers' agent. *See Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988) (inadmissible evidence was insufficient to satisfy moving party's burden of production on a motion for summary judgment).

Therefore, the Court concludes that Injury Assistance has not provided any relevant documents or other evidence to support its assertion that it was authorized to act as the agent of the preferred providers and thus to file and enforce liens. Without deciding whether such agency would be valid under Arizona law, the Court finds that Injury Assistance has not established that it was the agent of the referred providers. Thus, Injury Assistance's purported agency relationship with the referred providers does not support its affirmative defense asserting health care provider lien rights.

### B.    Right to File and Enforce Liens as the Assignee of the Providers

The Court also finds that the referred providers did not assign any health care provider lien rights to Injury Assistance through the Agreements. Although each of the Agreements states that it is "supported by the attached duly executed lien," there are no liens attached to the Agreements.[9] (Doc. 98, Ex. 1.) Instead, Injury Assistance argues that because it "was appointed agent for all liens filed, it is entirely proper for IA to file valid liens for the providers in question." (*Id.* at 2.) Injury Assistance then argues that the lien it filed on February 24, 2011 satisfied the requirements for perfecting a lien under Ariz. Rev. Stat. § 33-932.[10] (*Id*. at 2, Ex. 2.) Thus, it appears that Injury Assistance is arguing that through the Agreements, and the lien it filed on February 24, 2011, it filed health care provider liens as the assignee of the providers.

As an initial matter, this argument fails because, as set forth above, Injury Assistance has not presented any documents or other evidence to establish that it was acting as the referred providers' agent. In addition, Injury Assistance has not provided any evidence that the referred providers filed health care provider liens and thus had lien rights that could be assigned to Injury Assistance. Therefore, even if the Court accepted Injury Assistance's argument that health care provider lien rights can be assigned under Arizona law, Injury Assistance's rights, as the assignee of the providers, could not exceed

---

[9] Injury Assistance does not argue that the reference to an "attached duly executed lien" refers to its February 24, 2011 lien. The Court previously reviewed this language in two of the Agreements and noted that it could refer to Injury Assistance's February 24, 2011 lien. (Doc. 89 at 6.) However, Injury Assistance has submitted fifteen additional Agreements in which it purchased the referred providers' accounts. From these additional Agreements, the Court finds that the reference to an "attached duly executed lien" does not refer to the February 24, 2011 Injury Assistance lien. Fifteen of the seventeen Agreements are dated *after* the Injury Assistance lien and therefore the Agreements could refer to the lien, which was executed before the Agreements were signed. However, two of the Agreements are dated *before* the lien was filed and therefore the reference to an "attached duly executed lien" could not refer to the Injury Assistance lien, which had not yet been executed. Thus, it appears that to the extent the providers and Injury Assistance intended for the providers to file health care provider liens, and then assign the lien rights to Injury Assistance by attaching those liens to the Agreements, they failed to do so.

[10] The Court examined the Injury Assistance lien (Doc. 16, Ex. 1; Doc. 98, Ex. 2), and found that it did not comply with Ariz. Rev. Stat. § 33-392(A), which establishes the requirements to perfect a lien. (Doc. 89 at 5, 12.)

- 9 -

the providers' rights as assignors. *See K.B.,* 941 P.2d at 1292 ("An assignee steps in to the shoes of [its] assignor.") Because there is no evidence that the providers filed any health care provider liens, or authorized Injury Assistance to file liens, the Court finds that the providers did not have any lien rights that they could assign to Injury Assistance.

The Injury Assistance lien, filed February 24, 2011, is valid only to the extent Injury Assistance had the right to file a health care provider lien. Injury Assistance has acknowledged that it is not a health care provider and thus could assert lien rights only as the agent or assignee of the providers. (Doc. 89 at 8.) Therefore, the Court finds that Injury Assistance's lien does not create any valid rights to the settlement proceeds. Because Injury Assistance does not have valid lien rights against the settlement proceeds, the Court grants Berrey's motion for summary judgment on Injury Assistance's affirmative defense that it has lien rights. (Doc. 66.)

**III.    PIF's Claim to the Settlement Funds**

**A.    PIF's and Berrey's Response to the Order to Show Cause**

As previously stated, in response to the Court's order directing PIF and Berrey to file supplemental briefing addressing the nature of PIF's claims to the settlement proceeds, PIF and Berrey entered a "novated" settlement agreement that purported to assign Berrey's rights in the settlement proceeds to PIF. (Doc. 95 at 2-3; Ex. 2.) The Court has already concluded that this settlement agreement is either unenforceable as an attempted assignment of the proceeds of Berrey's personal injury claim, or that it provides only the basis for a possible contract claim, not a claim in interpleader. (Doc. 107 at 4-5, 8.) The Court also entered an order to show cause, again directing PIF and Berrey to address the basis for PIF's claim against the settlement proceeds from Berrey's personal injury claim. The Court explicitly ordered PIF and Berrey to "address the loan agreements between Berrey and PIF" and warned that it would "not consider any additional argument based on the [novated] settlement agreement." (*Id.* at 9.)

In response to the order to show cause, PIF submitted copies of three purchase agreements with Berrey. (Doc. 113, Ex. 1.) PIF, however, did not make any argument

that these agreements provide a basis for its claim against the settlement proceeds. Although the Court provided PIF two opportunities to explain how its prior agreements with Berrey established a claim to the settlement proceeds, in the Court's order directing supplemental briefing and its order to show cause (Docs. 89, 107), PIF has not done so. Furthermore, PIF has argued that the novated settlement agreement "supersedes all previous agreements between PIF and [] Berrey." (Doc. 95 at 2.) Therefore, the Court will not review the prior agreements and attempt to fashion an argument for PIF to establish a basis for its claim to the settlement funds.

Despite the Court's clear order to address the loan agreements and its warning that it would not consider arguments based on the settlement agreement (Doc. 107 at 9), PIF nonetheless responded to the order to show cause by arguing that "the novated settlement agreement . . . unequivocally grants PIF 'some entitlement to the money or property at issue' in this action." (Doc. 113 at 5.) PIF further argued that, based on the settlement agreement, Berrey's interest in the settlement proceeds, up to $12,000, were "sold, assigned, and transferred" to PIF and therefore "PIF has *an interest in seeing that the interpleaded funds are properly distributed.*" (*Id.* at 1.) PIF further argues that based on the settlement agreement it has a "legal right to be paid from the funds in interpleader."[11] (*Id.* at 4.)

Thus, PIF did not make any arguments based on the loan agreements and instead based its arguments on the settlement agreement. The Court could dismiss PIF's claims

---

[11] PIF's argument that the settlement agreement establishes that it has a "legal right" to the interpleaded funds either ignores or misunderstands the Court's prior orders, which explained that, under Arizona law, "if an asserted right of reimbursement 'create[s] an interest in any recovery against a third party for bodily injury . . . [it] is the legal equivalent of an assignment and therefore unenforceable.'" (Doc. 89 at 14 (quoting *Druke,* 576 P.2d at 492), and (citing *Lingel,* 8 P.3d at 1168 (contract to share proceeds of wrongful death claim was an unenforceable assignment of a personal injury claim because plaintiffs were asserting "a direct interest in the proceeds" of the claim); *see also* Doc. 107 at 4, 7 (explaining that to the extent the novated settlement agreement creates an interest or right to the proceeds of Berrey's personal injury claim for PIF, it is an unenforceable assignment).) PIF's argument, in response to the order to show cause, that it has a "legal right to be paid from the funds in interpleader" (Doc. 113 at 4), establishes that the settlement agreement in the "legal equivalent of an assignment and therefore unenforceable." *See Druke,* 576 P.2d at 492. Therefore, the settlement agreement does not establish that PIF has a right to the interpleaded funds.

- 11 -

based on this violation of its order to show cause. *See* Fed. R. Civ. P. 41(b); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-31 (1962) (recognizing that a federal district court has the inherent power to dismiss a case under Rule 41(b)). Nonetheless, the Court will consider PIF's arguments based on the settlement agreement.

### B.     PIF's Claims under the Settlement Agreement

PIF argues that "even if the Court finds PIF's claim for payment unenforceable, it cannot find — on that basis alone — that jurisdiction fails because PIF in not a proper party to the action." (Doc. 113 at 3.) PIF further asserts that it "is entitled to participate in this interpleader because it has an undeniable interest in ensuring that the funds on deposit with the Court are not distributed in a manner that would unlawfully diminish the pool of funds from which PIF has agreed it will accept payment-in-full." (*Id.*)

Thus, PIF is arguing that, even if it does not have a claim against the interpleaded funds because its settlement agreement with Berrey is unenforceable under Arizona law as an assignment of a personal injury claim, the Court nonetheless has interpleader jurisdiction under § 1335 because Berrey may not have sufficient resources to pay its contractual obligations to PIF and other creditors. As set forth below, this argument fails because it disregards the nature of an interpleader claim.

PIF argues that interpleader actions proceed in two stages: first, the court determines whether the stakeholder is entitled to bring the action; and second, the court determines the competing rights of the competing claimants to the fund. (*Id.* at 2.) PIF argues that the first requirement has been met because minimal diversity has been established, and because "Berrey has demonstrated that he legitimately fears multiple liability directed against a single fund, *regardless of the merits of the competing claims.*"[12] (*Id.*)

---

[12] PIF asserts that the Court has interpleader jurisdiction and "any investigation into the merits of PIF's claims is irrelevant to that discussion." (Doc. 113 at 2.) PIF nonetheless argues that the Court should consider the merits of Injury Assistance's claim against the interpleaded settlement funds and reject those claims. (Doc. 113 at 3 (the Court should not order the proceeds distributed to Injury Assistance based on its "false lien or claimed contract").)

- 12 -

1    Although PIF correctly notes that interpleader is designed to protect stakeholders
2 from multiple claims against the same fund, it assumes, without analysis, that Berrey
3 faces multiple claims to a single fund.  As the Ninth Circuit has explained, "a basic
4 jurisdictional requirement of a statutory interpleader action is that there be 'adverse
5 claimants' to a particular fund."  *Libby, McNeill, and Libby v. City Nat'l Bank, et al.,* 592
6 F.2d 504, 507 (9th Cir. 1979) (citations omitted).  Interpleader is designed to protect the
7 stakeholder from the possibility of multiple liability "when only a single obligation is
8 owing."[13]  *Id*. at 509 (citations omitted).

9    "The requirement that the claims as to which interpleader is sought be adverse to
10 each other 'is not met when . . . the 'stakeholder' may be liable to both claimants.'"
11 *Reserve Int'l Liquidity Fund, Ltd. v. Caxton Int'l Ltd.,* 2010 WL 1779282, at *10 (S.D.
12 N.Y. Apr. 29, 2010) (citations omitted).  "Thus, the protection against 'double or multiple
13 liability' . . . is protection only against double or multiple liability that is unjustifiable
14 because the plaintiff has but a single obligation."  *Id.* (finding that stakeholder faced
15 conflicting claims to a common fund's assets); *see also Bradley v. Kochenash,* 44 F.3d
16 166, 168 (2d Cir. 1995) ("Interpleader is designed to prevent multiple recoveries only
17 when there are not multiple obligations; it is not intended to telescope multiple
18 obligations into one.  Since in principle multiple recoveries would be justifiable in light
19 of the multiplicity of duties owed by these plaintiffs, interpleader was properly denied.").

20    Here, the Court has already determined that Injury Assistance and PIF do not have
21 claims against the settlement proceeds because their claims are unenforceable as the legal
22 equivalent of an assignment of Berrey's personal injury claim.  Instead, PIF and Injury
23 Assistance may have contract claims against Berrey, but they do not have a right of
24 payment from the settlement proceeds deposited with the Court.  Therefore, Berrey does
25 not face multiple claims to a single fund, or multiple liability based on a single

---

[13] For example, when the proceeds of an insurance policy are subject to several competing claims, a stakeholder may file an interpleader action to protect itself from the problems posed by multiple claimants to a single fund.  *See Minnesota Mut. Life Ins. Co. v. Ensley,* 174 F.3d 977, 980 (9th Cir. 1999).

- 13 -

1   obligation. Instead, Berrey faces possible multiple liability based on multiple contractual
2   obligations. *See Nevada v. Pioneer Cos., Inc.,* 245 F. Supp. 2d 1120, 1128 (D. Nev.
3   2003) (interpleader inappropriate when stakeholder's liability arose from a variety of
4   contractual relationships it had entered, which resulted in competing obligations).

5   PIF's asserts that it has an "interest in seeing that the interplead funds are properly
6   distributed," and in ensuring that these funds are not "distributed in a manner that would
7   unlawfully diminish the pool of funds." (Doc. 113 at 1, 2.) Thus, it asserts interpleader
8   jurisdiction is appropriate in this case. In *Nevada*, the court rejected a similar argument
9   that interpleader would be appropriate based on the concern that the stakeholder would
10  not have sufficient money to satisfy its multiple contractual obligations. 245 F. Supp. 2d
11  at 1128. The court explained that:

> While this eventuality may occur, a suit in interpleader is inappropriate to resolve the underlying conflicts. Here, the alleged insufficiency of the fund does not result from several companies' vying for priority with respect to a "single obligation." Instead, the potential insufficiency of the fund results from multiple, competing obligations [the stakeholder] voluntarily made with a number of companies. In other words, the fight here is over who gets paid first out of a limited coffer — as opposed to a fight over who gets paid at all.

17  *Id.* (citing *State Farm,* 386 U.S. at 536 ("None of the legislative and academic sponsors
18  of a modern federal interpleader device viewed their accomplishment as a 'bill of peace,'
19  capable of sweeping dozens of lawsuits out of the various state and federal courts in
20  which they were brought and into a single interpleader proceedings.")). Interpleader is
21  not available whenever there are multiple claimants against a particular defendant.
22  *Nevada,* 245 F. Supp. 2d at 1128 (citing 4 James Wm. Moore, et al, *Moore's Federal*
23  *Practice* § 22.02[1] (3d ed. 2002)). Therefore, the Court finds that PIF and Injury
24  Assistance do not have claims to the interpleaded funds, and therefore Berrey cannot
25  establish the requirements of statutory interpleader based on their claims.

26  **C.   PIF's Unjust Enrichment Claim**
27  PIF also asserts that it has a claim to the interpleaded settlement funds under the
28  theory of unjust enrichment. (Doc. 113 at 4-5.) To establish this claim, PIF must

establish, in part, an "absence of a remedy provided by law."[14] To establish this element, PIF argues that it advanced money to Berrey, "the source of funds intended to reimburse PIF are the proceeds of Berrey's personal injury litigation," and because "Arizona is an anti-subrogation state," PIF will have no legal remedy to recover the advanced funds. (Doc. 113 at 4.) In other words, PIF is arguing that if its claim to the settlement funds is unenforceable under Arizona law as an assignment of the proceeds of Berrey's personal injury claim, then it should be allowed to circumvent Arizona law and assert an interest in the settlement funds under the theory of unjust enrichment.

PIF cites no authority or Arizona case applying the theory of unjust enrichment in this manner. Indeed, Arizona cases have rejected unjust enrichment claims based on contracts that are illegal or that violate public policy. *See Mousa,* 218 P.3d at 1044 (plaintiff could not recover under theory of unjust enrichment for performing contract for broker services, which was prohibited by law because he was not licensed broker); *Landis v. Arkules,* 835 P.2d 458, 467-68 (Ariz. Ct. App. 1992) (contract was unenforceable because it involved conducting private investigation without a license, therefore equitable relief of unjust enrichment was not available because contract was void as against public policy).

As the Arizona Court of Appeals explained in *Landis*, when a contract is illegal, the person entering this contract is denied enforcement and restitution. *Landis*, 835 P.2d at 468 (citation omitted). The court further stated that if restitution were allowed, it would encourage illegal contracts:

> If restitution were granted, this may in some situations, prove tantamount to enforcement. At the very least, it would provide a floor or cushion on which an illegal actor might fall back, sure that if his illegal conduct were not challenged, he could profit by it, and that if it were challenged, he could at least get his money or property back. This would [no] doubt encourage such illegal contracts.

---

[14] The elements of unjust enrichment are (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of any justification for the enrichment and impoverishment, and (5) the absence of any remedy provided by law. *Mousa v. Saba,* 218 P.3d 1038, 1045 (Ariz. Ct. App. 2009).

- 15 -

*Id*.

Furthermore, PIF's argument, if accepted, would nullify Arizona law prohibiting the assignment of personal injury claims. PIF's argument that it does not have a legal remedy to recover advanced funds because its agreement is prohibited by Arizona law, would apply with equal force to every assignment of a personal injury claim. Therefore, the Court rejects this argument and finds that PIF does not have a claim to the interpleaded settlement funds under the theory of unjust enrichment.

## IV.   Conclusion

As set forth above, Berrey does not face multiple liability to the interpleaded funds based on claims from diverse claimants. Instead, PIF and Injury Assistance have potential contract claims against Berrey, but do not have claims to the interpleaded funds. The only claimants to the interpleaded funds, Berrey and Scottsdale Healthcare, are not diverse and therefore the Court does not have jurisdiction under § 1335. Because the Court does not have original jurisdiction over the parties' claims, it cannot exercise supplemental jurisdiction over any claims. Therefore, Court will dismiss this matter with prejudice.

Accordingly,

**IT IS ORDERED** that the Court lifts its Order (Doc. 89) holding the cross motions for summary judgment in abeyance pending supplemental briefing on portions of Berrey's motion for summary judgment (Doc. 66) and Injury Assistance's cross motion for summary judgment. (Doc. 72.) The Court **GRANTS** Berrey's motion for summary judgment on Injury Assistance's affirmative defense that it has statutory lien rights to Berrey's settlement proceeds (Doc. 66) and **DENIES** Injury Assistance's cross motion on its affirmative defense that it has statutory lien rights to Berrey's settlement proceeds. (Doc. 72) The Court's ruling on the cross motions for summary judgment is now completed and the Clerk of Court shall terminate the motions. (Docs. 66, 72.)

The Court has previously denied Berrey's motion for summary judgment (Doc. 66) and Injury Assistance's cross motion for summary judgment (Doc. 72) on

1  Injury Assistance's counter claim for breach of contract.  (Doc. 89.)  The Court does not
2  have supplemental jurisdiction over Injury Assistance's contract claim.  The Court finds
3  that PIF does not have a claim to the interpleaded funds, but may have a contract claim
4  against Berrey.  The Court does not have supplemental jurisdiction over PIF's contract
5  claim.  The Court also finds that Berrey and Scottsdale Healthcare are not diverse
6  claimants and the Court does not have jurisdiction over an interpleader claim between
7  Berrey and Scottsdale Healthcare under § 1335.

8  **IT IS FURTHER ORDERED** that this matter is dismissed with prejudice.

9  **IT IS FURTHER ORDERED** that the Clerk of Court will disburse the remaining
10  funds deposited in the Court's registry, $12,950.02 with any accrued interest, payable to
11  Andrew Berrey, by mailing a check for these funds to his attorney Michael Love,
12  Ridenour Hienton & Lewis, PLLC, 201 North Central Avenue, Suite 3300, Phoenix,
13  Arizona 85004-1052.

14  Dated this 28th day of August, 2015.

_____
Bridget S. Bade
United States Magistrate Judge